USDC SCAN INDEX SHEET

















GAC    8/2/06    15:25

3:05-CV-01741   ARABIAN V. SONY ELECTRONICS INC

*44*

*MEMSUP.*

ORIGINAL

1  HULETT HARPER STEWART LLP
   BLAKE MUIR HARPER, SBN: 115756
2  JENNIFER A. KAGAN, SBN: 234554
   550 West C Street, Suite 1600
3  San Diego, CA 92101
   Telephone:    (619) 338-1133
4  Facsimile:    (619) 338-1139

5
   WOLF POPPER LLP
6  LESTER L. LEVY
   PATRICIA I. AVERY
7  EMILY MADOFF
   ELIZABETH FERGUSON
8  845 Third Avenue
   New York, NY 10022
9  Telephone:    (212) 759-4600
10 Facsimile:    (212) 486-2093

11
   Attorneys for Plaintiffs
12
               IN THE UNITED STATES DISTRICT COURT
13
               SOUTHERN DISTRICT OF CALIFORNIA
14
   THEODORE ARABIAN, MARTIN SAUER,       CASE NO. 05 CV 1741 WQH(NLS)
15 EKREM SARAC, STEVE VARADI, and
   DAVID JOHNSON,                        CLASS ACTION
16
                          Plaintiffs,    PLAINTIFFS' MEMORANDUM OF
17                                        POINTS AND AUTHORITIES IN
                                          SUPPORT OF MOTION FOR
18 v.                                     CERTIFICATION OF THE ACTION AS
                                          A CLASS ACTION
19 SONY ELECTRONICS INC.,
                                          DATE:    December 11, 2006
20                        Defendant.      TIME:    11:00 a.m.
                                          CTRM:    4
21                                        JUDGE:   Honorable William Q. Hayes

22

23

24 **CONFIDENTIAL – FILED CONDITIONALLY UNDER SEAL PENDING RULING ON**

25 *EX PARTE* **APPLICATION TO SEAL DOCUMENTS**

26

27

28

FILED

06 JUL 31  PH 4: 03

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

## **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     SUMMARY OF ARGUMENT...........................................................................1

III.    BACKGROUND AND STATEMENT OF FACTS ..........................................2

        A.      Sony's Marketing, Sale and Distributing of the Laptops.........................3

        B.      The Defect In The Laptops And The Symptoms Associated With This
                Defect ......................................................................................................4

        C.      Plaintiffs' Experience..............................................................................5

IV.     ARGUMENT.......................................................................................................6

        A.      Principles and Standards for Class Certification......................................6

        B.      This Action Meets the Rule 23(a) Requirements for Class Certification ...............8

                1.      Numerosity -- Joinder Of All Class Members Is Impracticable .................8

                2.      Common Issues Exist and Predominate.......................................10

                        a.      The Elements of Plaintiffs' Claims...............................11

                        b.      Common Questions of Law and Fact Predominate Over Any
                                Questions Affecting Only Individual Members...........................13

                3.      Plaintiffs' Claims Are Typical Of Those of the Members of the
                        Class ..............................................................................................15

                4.      Plaintiffs and Their Counsel Will Fairly and Adequately Represent
                        the Class ........................................................................................16

        C.      The Requirements of Rule 23(b) Are Satisfied......................................21

                1.      The Requirements of Rule 23(b)(2) Are Met............................21

                2.      The Requirements of Rule 23(b)(3) Are Met............................22

V.      CONCLUSION..................................................................................................24

i

# TABLE OF AUTHORITIES

## CASES

273 F.3d 1266 (9th Cir. 2001).................................................................................... 7

Bartold v. Glendale Fed. Bank,
    81 Cal. App 4th 816 (4th Dist. 2000)................................................................. 7

Bates v. UPS,
    204 F.R.D. 440 (N.D. Cal. 2001)........................................................................ 9

Blackie v. Barrack,
    524 F.2d 891 (9th Cir. 1975) ..................................................................... 6, 7, 11

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999)
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P. 2d 527l...................................... 12

Chamberlan v. Ford Motor Co.,
    223 F.R.D. 524 (N.D. Cal. 2004)...................................................................... 23

Chamberlan v. Ford Motor Company,
    402 F. 3d 952 (9th Cir. 2005) ........................................................................... 14

Classen v. Weller,
    145 Cal. App. 3d 27 (1st Dist. 1983)................................................................ 16

Clothesrigger, Inc. v. GTE Corp.,
    191 Cal. App. 3d 605 (4th Dist. 1987)............................................................... 8

Collins v. Rocha,
    7 Cal. 3d 232 (1972) ........................................................................................ 11

Cummins, Inc. v. Superior Court,
    36 Cal. 4th 478 (2005) ....................................................................................... 8

Daniels v. Centennial Grous, Inc.,
    16 Cal. App. 4th 467 (4th Dist. 1993)............................................................... 15

Day v. At&T Corp.,
    63 Cal. App. 4th 325 (1st Dist.1998)................................................................ 12

Doe v. Los Angeles Unified Sch. Dist.,
    48 F Supp. 2d 1233 (C.D. Cal. 1999) ................................................................ 9

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974).......................................................................................... 7

Hanlon v. Chrysler Corp.,
    150 F. 3d 1011 (9th Cir. 1998) ................................................................. passim

Hicks v. Kaufman & Broad Home Corp.,
    89 Cal. App. 4th 908 (2d Dist. 2001)................................................................ 13

ii

*Hopkins v. DeBeers Centenary AG*,
    2005 WL 1020868 (Cal. Super. Ct. April 15, 2005)............................................................ 10

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988) ....................................................................................... 10

*In re Heritage Bond Litig.*,
    2004 Dist. LEXIS 15386 (C.D. Cal. Jul. 12, 2004)............................................................7

*In re THQ, Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ....................................... 7, 11, 15, 16

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds,*
    *County of Los Angeles v. Jordan*, 459 U.S. 810 (1982).................................................... 9, 16

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ....................................................................................................... 12

*Linder v. Thrifty Oil Co.*,
    23 Cal. 4th 429 (2000) ....................................................................................................... 23

*Linney v. Cellular Alaska Pshp.*,
    151 F. 3d 1234 (9th Cir. 1998) .......................................................................................... 22

*Massachusetts Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (4th Dist. 2002)........................................................................ 13, 22

*McGhee v. Bank of Am.*,
    60 Cal. App. 3d 442 (1st Dist. 1976) ................................................................................. 21

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)...............................................................................................22

*Nagel v. Twin laboratories, Inc.*,
    109 Cal. App. 4th 39 (4th Dist. 2003)................................................................................ 12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................................ 23

*Prata v. Superior Court*,
    91 Cal. App. 4th 1128 (2d Dist. 2001)........................................................................... 11, 12

*Probe v. State Teacher's Retirement Sys.*,
    780 F. 2d 776 (9th Cir.1986) ............................................................................................. 22

*Richmond v. Dart Indus., Inc.*,
    29 Cal. 3d 462 (1981) .......................................................................................... 6, 7, 14, 17

*Shapiro v. Sutherland*,
    64 Cal. App. 4th 1534 (1998) ............................................................................................ 13

*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F. Supp. 2d 942 (E.D.Tex. 2000).............................................................................. 8, 16

*Simons v. Horowitz*,
  151 Cal. App. 3d 834 (1st Dist. 1984) ............................................................ 21

*State v. Levi Strauss & Co.*,
  41 Cal. 3d 460 (1986) ....................................................................................... 6

*Vasquez v. Superior Court*,
  4 Cal. 3d. 800 (1971) .......................................................................... 7, 11, 12

*Westways World Travel, Inc. v. AMR Corp.*,
  218 F.R.D. 223 (C.D. Cal. 2003) ..................................................................... 16

*Wilner v. Sunset Life Ins. Co.*,
  78 Cal.App.4th 952 (2d Dist. 2000) ............................................................ 8, 11

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................................... 7

## STATUTES, RULES & REGULATIONS

California Business & Professions Code
  § 17200 ........................................................................................................... 22
  § 17500 ..................................................................................................... 11, 12

California Civil Code
  § 1770 ............................................................................................................... 8
  § 1770(a)(5) .................................................................................................... 12
  § 1781(b) ........................................................................................................... 8
  § 1790 ......................................................................................................... 8, 12

Federal Rules of Civil Procedure
  Rule 23 .......................................................................................................... 6, 7
  Rule 23(a) ....................................................................................... 1, 8, 16, 21
  Rule 23(a)(1) .................................................................................................... 9
  Rule 23(a)(2) .................................................................................................. 10
  Rule 23(a)(3) .................................................................................................. 15
  Rule 23(a)(4) .................................................................................................. 16
  Rule 23(b) ................................................................................................ 1, 21, 22
  Rule 23(b)(3) .................................................................................................. 22
  Rule 23(c) ..................................................................................................... 1, 3
  Rule 23(g) ...................................................................................................... 20

## SECONDARY AUTHORITIES

7A Wright & Miller, *Federal Practice & Procedure* (2d ed. 1986)
  § 1775 .............................................................................................................. 21
  § 1777 .............................................................................................................. 22

H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05 (3d ed. 1992) .................................. 9

05 CV 1741 WQH(NLS)

I.  **INTRODUCTION**

Plaintiffs David Johnson ("Johnson") and Ekrem Sarac ("Sarac") respectfully submit this Memorandum in support of their motion pursuant to Rule 23(c) of the Federal Rules of Civil Procedure to certify this action to proceed as a class action on behalf of all persons in the United States and Canada who purchased Sony Electronics Inc.'s ("Defendant" or "Sony") Vaio, FX series laptop notebook computers.

II.  **SUMMARY OF ARGUMENT**

This is a class action arising as a result of a defect in the second memory slot that affects Sony Vaio FX series laptop notebook computers.  Defendant has long known of this defect from numerous complaints made to it regarding the problem, as well as having issued a "Confidential" internal "Technical News" service bulletin describing the problem where the FX series of Laptops failed to boot or recognize the memory and the cause thereof, the failure of the solder on the connector pins, primarily in the second memory slot.[1]  The defect renders the computer unable to read the available memory in the second memory slot.  Since the notebook computers have the available Random Access Memory ("RAM") configured over two memory slots and are generally sold with either 128 or 256 MB of RAM with the specific feature that the memory is upgradeable to 512 MB of RAM, the inability of the computer to be able to read the available memory in the second memory slot renders the computer unusable for the purposes for which it was sold.  The defect is essentially uniform and relatively simple to repair.  Nevertheless, Sony has routinely denied and hidden the existence of this defect from the public, while internally essentially acknowledging it in its "Technical News" bulletin.  As a result of Sony's conduct, hundreds, if not thousands of class members, have been forced to pay for repairs, customer service charges and related costs that they otherwise would not have incurred or have been denied the use of their

---

[1]  A copy of this "Confidential" "Technical News" bulletin is annexed to the Declaration of E. Elizabeth Ferguson in Support of Plaintiffs' Motion for Certification of the Action as a Class Action ("Ferguson Decl."), as Exh. A.  Pursuant to the discussion between counsel for Plaintiffs and counsel for Defendant, the documents designated "Confidential" are being submitted in the Ferguson Declaration and the non-confidential documents are being submitted separately as exhibits to the Declaration of Patricia I. Avery in Support of Plaintiffs' Motion for Certification of the Action as a Class Action ("Avery Decl.").

1

1    computers because they would not function in the manner in which they were supposed to.

2      The proposed class ("Class") and sub-class ("Sub-Class") (collectively, the "Classes") in

3    this case are readily ascertainable and well defined. They are represented by fully qualified class

4    representatives with lawyers who are experienced in prosecuting class actions in general and

5    consumer class actions in particular. For these reasons, as well as all of the reasons explained

6    fully below, the Court should certify this action to proceed as a class action.

7    **III.**    **BACKGROUND AND STATEMENT OF FACTS**

8      Plaintiffs, Theodore Arabian, Martin Sauer, Ekrem Sarac, and Steve Varadi, brought this

9    class action (the "*Arabian* Action") against Sony on behalf of (i) persons in the U.S. who

10    purchased Sony Vaio GRX laptops; and (ii) persons in the U.S. and Canada who purchased Sony

11    Vaio FX laptops. Plaintiff David Johnson subsequently intervened in this action with the consent

12    of Defendant, on behalf of purchasers of FX laptops.

13      On July 3, 2006, this Court entered an order staying the part of this action dealing with the

14    GRX series of laptop computers because of the pendency of a related state court proceeding

15    entitled, *Hapner v. Sony Electronics, Inc.,* Case No. GIC839244 (Superior Court of San Diego

16    County, California) (the "*Hapner* Action"). The Court declined to stay the remaining part of the

17    action dealing with the FX series of laptops because the issue was not procedurally before it. A

18    Motion to Stay the balance of the action is currently on file and scheduled to be heard before this

19    Court on August 21, 2006.

20      The California Superior Court in the related *Hapner* Action has already certified that case

21    to proceed as a class action on behalf of purchasers of Sony Vaio GRX series notebook computers

22    for the same defect. *See* Avery Decl., Exh. G. Defendant filed a writ with the California

23    Appellate Court seeking to reverse the class certification in the *Hapner* Action. The Court has

24    entered a briefing schedule on the writ and briefing is currently anticipated to be completed in

25    August 2006.

26      This action arises as a result of the marketing, sale, and distribution of defective Sony Vaio

27    laptop computers in the FX series ("Laptops") in the United States and Canada. Complaint

28    ("Compl.") *passim*. The defect that affects these Laptops is common and uniform and, like other

2

1    Class members, adversely affected the performance of Plaintiffs' Laptops.   In short, their

2    computers ultimately failed to work properly due to the problem utilizing the second memory slot.

3    *Id.* at ¶¶31-36, 48-50.  As explained below, the business records of Sony, as well as widespread

4    reports of complaints concerning these machines on the Internet, confirm the existence of this

5    common defect in the Laptops and the suitability of this case for class action treatment.

6         **A.      Sony's Marketing, Sale and Distributing of the Laptops**

7         Defendant is headquartered in San Diego, California.  It engineers, manufactures, sells and

8    markets, *inter alia*, Vaio computers.[2]  Sony marketed, sold, and distributed the FX series of

9    Laptops.[3]  Sony has sold thousands of FX series Laptops.  *See, e.g.,* Ferguson Decl., ¶¶6-7 and

10   Exhs. D and E.  The FX Laptops were sold to consumers at retail, often for in excess of $1,000.

11   *See generally* Ferguson Decl., Exhs. F and C at 102 (Transcript of Deposition of David Johnson

12   ["Johnson Tr."] at 56: 4-6).  Plaintiff Johnson purchased his FX series notebook in California at a

13   cost of in excess of $1,700.  Plaintiff Sarac purchased his FX series notebook in Toronto at a cost

14   of in excess of $2,000 (Canadian).  *See* Ferguson Decl., Exh. B, at 027 (Transcript of Deposition

15   of Ekrem Sarac ["Sarac Tr."] at 80:2-4.).

16        Sony made representations that the total system memory on the FX Laptops was

17   expandable from 128 MB of RAM to 512 MB of RAM.  *E.g.,* Avery Decl., Exh. A at 005-7.  The

18   Laptops had two memory slots "Slot 1" and "Slot 2" with the total memory configured between

19   _____

20   [2]   Defendant is one of the principal operations of Sony Corp. of America and Sony Vaio

21   computers are sold in retail stores, "Sony Style" stores, and through Sony Corp.'s website.
     Information on Vaio computers being sold by Defendant is available on the Sony.com website.

22   [3]   Sony Corp., of course, touts the quality of its consumer products and its service in its marketing.

23   For example, on its Sony Internet website Sony includes "Sony Vaio Service Testimonials,"
     claiming that "Quality and service are synonymous with the Sony Brand," and emphasizes in its

24   corporate information section of its website that, *inter alia*,  "[t]oday, Sony continues to fuel
     industry growth with the sales of innovative Sony products, as well as with the company's

25   convergence strategy....includ[ing] Vaio notebooks that raise the bar in both form and function,"
     "[t]he phenomenal strength of the Sony brand worldwide is surely a testament to the company's

26   reputation for producing innovative products of exceptional quality and value," "Sony has the

27   brand recognition and marketing savvy," and "[i]n the minds of consumers, Sony is one of the
     world's greatest brands – the company was once again rated the number one brand in the U.S. by

28   the 2000 Harris poll."  *See* Avery Decl., Exh. D, at 186-191.

                                            3

1    the two slots. *See* Avery Decl., Exhs. B at 023 and C at 109. If the machines were sold with only

2    128 MB of memory, then the memory module would only be placed in Slot 1, but the memory

3    could be expanded with a larger memory module and through using Slot 2. *Id.* If the machines

4    were initially sold with 256 MB of memory, then the factory installed memory was generally

5    configured over both Slots 1 and 2, with 128 MB of memory in each slot. *Id.* However, this

6    memory also could be expanded to 512 MB. *Id.*: and Avery Decl., Exhs. A and E. These

7    representations appear on the packaging in which the Laptops were contained and in print and

8    internet advertisements, as well as "spec" or "specifications sheets" that were prominently

9    displayed in stores selling the notebooks and included in the packaging with the notebooks. *E.g.*,

10   Avery Decl., Exhs. A and E; Ferguson Decl., Exh. C at 120 (Johnson Tr. 129:6-17).

11        Sony sold the Laptops with a one year warranty which purported to exclude implied

12   warranties and all remedies except for the replacement or repair provided therein. Sony did not

13   disclose that, if the Laptops required any significant repairs beyond the one year period, including

14   repairs of the defect at issue, it could cost $700, plus shipping and sales tax – an amount equal to

15   as much as one-third to one-half of the purchase price of the Laptops. Moreover, nothing in

16   Sony's warranty or advertising materials disclosed that the Laptops had inherently defective

17   components which prevented them from functioning properly and prevented the Laptops from

18   accessing certain (or all) of their random access memory .

19        **B.     The Defect In The Laptops And The Symptoms Associated With This Defect**

20        The particular defect at issue affects the memory slot on the Laptops. (The defect is

21   similar, if not identical, to the defect in the GRX series of laptops, which the Court in the *Hapner*

22   Action has already certified to proceed as a class action.) Specifically, the memory slot on the

23   Laptops is subject to malfunctioning as a result of problems during the manufacturing stage of the

24   motherboard for these computers. Sony designs the Laptops in a way that the memory slots are

25   attached to the motherboard of the computers with small dual inline memory modules

26   ("SODIMM") with pins ("Memory Connector Pins") on each side of the memory slot (these pins

27   supply voltage, i.e., current). Slot 2 is further not made with the same quality as slot one. As

28   Plaintiff Johnson testified, Slot 2 is plastic and not metal reinforced as Slot 1 is. *E.g.*, Ferguson

4

1   Decl., Exh. C at 113 (Johnson Tr. 100:15-101:5).  He further testified that his research indicated

2   numerous complaints about the inadequate soldering of the Slot 2 to the motherboard.  *Id.*, Exh. C

3   at 113-114 (Johnson Tr. 101:16-102:12).

4          As a result of inadequate soldering, many of the Laptops suffer from a Memory Slot

5   Problem in which the computer will not recognize half (or sometimes all) of the RAM and this

6   usually will be followed by intermittent failures to boot or freezing of the entire computer system.

7   Compl. at ¶¶ 2, 33;  Ferguson Decl., Exh. C at 109 and Exh B at 015 and 021 (Johnson Tr. at 82:2-

8   85; Sarac Tr. at 33:2-12, 54:5-11); and Exh. A at 005-06.

9          The widespread complaints about the soldering defect are borne out by Sony's own

10  "Confidential" "Technical News" bulletin which admits the existence of the problem, even

11  describing it as, "In the case that the System does not boot or System does not recognize the

12  memory, the cause is the solder exfoliation of the connector of the memory slot.  (It occurs at the

13  extension memory connector mainly. [i.e., Slot 2])  When this symptom is pointed out, replace the

14  Motherboard or re-solder of the connector."  *See* Ferguson Decl., Exh. A at 006.

15         **C.     Plaintiffs' Experience**

16         Plaintiff Johnson, a California resident, purchased his FX notebook in California in 2001

17  for his personal use (although he also used it for work).  Ferguson Decl., Exh. C at 100-101

18  (Johnson Tr. at 49:1-50:21).  As a result of the Memory Slot Problem, his Laptop encountered

19  severe performance problems that interfered with his use of this computer.  *Id.* Exh. C at 104-05

20  (Johnson Tr. at 65:1-66:3).  Specifically, Plaintiff Johnson's Laptop would not boot and, after

21  examining his computer, Johnson determined that the Laptop's second memory slot was not

22  working, thereby eliminating half of the Laptop's RAM and causing the computer to operate

23  slower and to ultimately fail completely.  *Id.*, Exh. C at 109 (Johnson Tr. at 82:2-85:1).[4]

24

25  [4]  Mr. Johnson was able to operate his laptop with this marginal level of performance for a short
    period because as result of guidance from the many other consumers who had experienced this
26  problem appearing at various Internet websites, he was able to temporarily fix the memory slot by
    applying very slight pressure on the memory slot through placing a thin piece of cardboard (barely
27  thicker than a piece of paper) between the cover and the module. *Id.*, Exh. C at 114-115 (Johnson
28  Tr. at 104:7 -- 107:20).

1    Mr. Johnson contacted Sony's customer service center regarding the problem and asked

2    whether there was any replacement or recall policy, but he was not informed of the defect in the

3    notebooks. He was told that he could ship the Laptop to Sony. He also learned (he does not recall

4    from whom) that he would have to pay approximately $700 for the repair because the computer

5    was no longer under warranty. *Id.*, Exh. C at 117 (Johnson Tr. at 117:10-17).

6    Plaintiff Sarac's FX series notebook failed as well after he upgraded the memory in

7    accordance with the instructions. *E.g.*, Exh. B at 072 (Sarac Tr. 258:17—259:25). He similarly

8    contacted Sony and learned he would have to pay approximately $1,000 (Canadian) to have his

9    computer repaired. *Id.*, Exh. B at 024, 054-55 (Sarac Tr. 68:7-11; 189:21-22; 190:23-24). Since

10   the repair cost was too high and the repair required soldering of the pins, Mr. Sarac used his own

11   experience as an electrical engineer to re-fuse some of the pins with a soldering iron. *Id.* at Exh. B

12   at 022 (Sarac Tr. at 58: 6-10. It worked immediately, but subsequently failed again. *Id.* at Exh. B

13   at 025 (Sarac Tr. 70:2—72:7).

14   **IV.   ARGUMENT**

15       **A.    Principles and Standards for Class Certification**

16   Cases focused on the common course of conduct by a single defendant are long recognized

17   by the Ninth Circuit to be prime candidates for class certification. *Blackie v. Barrack*, 524 F.2d

18   891, 902 (9th Cir. 1975). Class Certification is especially favored in the consumer protection

19   context where, as here, all class members will rely on the same evidence to establish the

20   defendant's liability. *See State v. Levi Strauss & Co.*, 41 Cal. 3d 460, 471 (1986) ("the California

21   courts have recognized that the consumer class action is an essential tool for the protection of

22   consumers against exploitative business practices"); *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462,

23   469, 470 (1981) (unanimous California Supreme Court stated "Class actions serve an important

24   function in our judicial system. By establishing a technique whereby the claims of many

25   individuals can be resolved at the same time, the class suit both eliminates the possibility of

26   repetitious litigation and provides small claimants with a method of obtaining redress for claims

27   which would otherwise be too small to warrant individual litigation.").

28   The Court must, of course, determine whether the prerequisites of Rule 23 have been met.

6

1  *In re THQ, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *5 (C.D. Cal. Mar. 22, 2002) (citing

2  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), as amended, 273

3  F.3d 1266 (9th Cir. 2001)). For class certification purposes, the Court is generally bound to accept

4  the factual allegations of the complaint as true. *THQ*, 2002 U.S. Dist. LEXIS 7753, at *7 (citing

5  *Blackie*, 524 F.2d at 901 n. 17). *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)

6  ("We find nothing in either the language or history of Rule 23 that gives a court any authority to

7  conduct a preliminary inquiry  into the merits of a suit in order to determine whether it may be

8  maintained as a class action.").

9      The Court may look beyond the pleadings to decide whether the elements of Rule 23 have

10  been met. *THQ*, 2002 U.S. Dist. LEXIS 7753, at *7. At this early stage of the litigation, though,

11  an extensive evidentiary showing is not required and the Court need only have sufficient

12  information to form a "reasonable judgment" on the requirements of Rule 23. *In re Heritage Bond*

13  *Litig.*, 2004 Dist. LEXIS 15386, at *8 (C.D. Cal. Jul. 12, 2004) (citing *Blackie*). Certification of a

14  class lay in the sound discretion of the Court. *Id.*; *THQ*, 2002 U.S. Dist. LEXIS 7753, at *7

15  (same).[5] *Any doubts about whether to certify a class should be resolved in favor of certification.*

16  *Richmond*, 29 Cal. 3d at 473-75; *Vasquez v. Superior Court*, 4 Cal. 3d. 800, 807 (1971).

17      Here, Plaintiffs propose the Classes defined below:

18      **Class**: All persons or entities in the United States and Canada, who purchased FX
    series of Laptops. Excluded from the Class are Defendant, its affiliates, employees,
19      officers and directors, persons or entities which distribute or sell the Laptops, the
    Court, and the legal representatives, heirs, successors or assigns of any such
20      excluded party.

21      **Sub-Class**: All Class members who purchased the FX series of Laptops in the
    State of California. Excluded from the Sub-Class are Defendant, its affiliates,
22      employees, officers and directors, persons or entities which distribute or sell the
    Laptops, the Court, and the legal representatives, heirs, successors or assigns of

23

24

25

---

26  [5]  The standards under California state law are similar. The class must simply identify "a group of

27  unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of
that group to identify himself or herself as having a right to recover based on the description."

28  *Bartold v. Glendale Fed. Bank*, 81 Cal. App 4th 816, 828 (4th Dist. 2000).

1   any such excluded party.[6]

2       Class membership defined by ownership of product that is the subject of the case is

3   sufficient to make a class ascertainable. *See Wilner v. Sunset Life Ins. Co.*, 78 Cal.App.4th 952,

4   959-60 (2d Dist. 2000).[7] The Classes that Plaintiffs propose clearly meet this criteria.

5       This action is well suited to be maintained as a class action here on a nationwide basis and

6   on behalf of purchasers in Canada, especially since Defendant is headquartered in the State of

7   California, and this State has significant contact, as well as a significant aggregation of contacts, to

8   the claims of the members of the Class. *See generally Shaw v. Toshiba America Information*

9   *Systems, Inc.*, 91 F. Supp. 2d 942 (E.D.Tex. 2000)(approving class certification of action regarding

10  5,000,000 allegedly defective computers).

11      **B.       This Action Meets the Rule 23(a) Requirements for Class Certification**

12      Rule 23(a) set four requirements for class certification, namely: (1) numerosity, (2)

13  commonality, (3) typicality, and (4) adequacy of representation.

14          **1.       Numerosity -- Joinder Of All Class Members Is Impracticable**

15      Numerosity is satisfied if "the class is so large that joinder of all members is

16

17  [6]   Plaintiff proposes this particular subclass of California residents in light of the California
    Supreme Court's holding in *Cummins, Inc. v. Superior Court*, 36 Cal. 4th 478 (2005), that,
18  although the protections and remedies of the Song-Beverly Consumer Warranty Act ("Sony-
    Beverly Act"), Civil Code §§ 1790 *et seq.*, are not limited to California residents, the Act applies
19  to goods purchased in California.

20  [7]   California courts consider the factors set forth in the Consumer Legal Remedies Act ("CLRA"),
21  Cal. Civ. Code § 1770 *et seq.*, in describing the requirements for class certification. *E.g.*,
    *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612 (4th Dist. 1987). Under the CLRA,
22  "[t]he court shall permit the suit to be maintained on behalf of all members of the represented
    class" if the following requirements are met:
23
        (1)     It is impracticable to bring all members of the Class before the aourt.
24
        (2)     The questions of law or fact common to the Class are substantially similar
25      and predominate over the questions affecting the individual members.

        (3)     The claims or defenses of the representative Plaintiffs are typical of the
26      claims or defenses of the class.

27      (4)     The representative Plaintiffs will fairly and adequately protect the interests
        of the class.

28  Cal. Civ. Code § 1781(b).

1   impracticable." Fed. R. Civ. P. 23(a)(1).  To meet this requirement, Plaintiffs need only show that

2   it is difficult or inconvenient to join all members of the proposed class.  *Jordan v. County of Los*

3   *Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds, County of Los Angeles v.*

4   *Jordan*, 459 U.S. 810 (1982).  "Plaintiffs do not need to state the exact number of potential class

5   members, nor is a specific number of class members required for numerosity." *Bates v. UPS*, 204

6   F.R.D. 440, 444 (N.D. Cal. 2001).  To satisfy the numerosity requirement "[t]he exact size of the

7   class need not be known so long as general knowledge and common sense indicate that it is large."

8   *Doe v. Los Angeles Unified Sch. Dist.*, 48 F Supp. 2d 1233, 1239 (C.D. Cal. 1999).  (citations and

9   internal quotes omitted)  *See generally*, H. Newberg & A. Conte, *Newberg on Class Actions*,

10  § 3.05 at 3025 (3d ed. 1992) (hereinafter, few as 40 class members should raise a presumption that

11  joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of

12  Rule 23(a)(1) on that fact alone.").

13       Here, Sony cannot reasonably dispute that joinder of all members of the Class is

14  impracticable.  The proposed Class is composed of all purchasers nationwide and in Canada and

15  Sony sold thousands of the FX series of Laptops at issue, *see* Ferguson Decl., ¶¶6 and 7, and Exhs.

16  D and Exh. E, and hundreds (if not thousands) of persons have complained about the problem with

17  the memory in the second memory slot, (obviously most are in the U.S., Ferguson Decl. ¶6, and

18  Exh. H at 187-426, many in California, see Ferguson Decl. ¶11, and in Canada; *Id.* at ¶11).[8]  *See*

19  _____

20  [8]  As Plaintiff Johnson testified, he spoke with a repair company that indicated "this is a problem
    that a lot of people are having."  Ferguson Decl., Exh. C at 121 (Johnson Tr. at 132:17-19).  He

21  also found a "large number [of complaints] online.  *Id.* (Johnson Tr. at 133:22-23).  When
    Defendant challenged Mr. Johnson about the veracity of the Internet postings, he stated,

22        But my judgment – as you say, do I – how do I come to this conclusion?  I

23        saw it on so many web sites.  I check again yesterday.  And now this is not – I'm
          going to expand on this.  If you go to Google right now and type "Sony problem

24        memory slot two," there's 332,000.  Now, that doesn't mean that all 332,000
          websites are about this problem, but a fair enough fraction, you know, then you

25        start to filter down and you start to do finer searches.

26        And I was trying to solve a problem with my computer in a desperate time,
          so I was refining it down and searching and searching and coming to a conclusion

27        that enabled me to fix the problem temporarily by putting the cardboard in.  But if
          you go now and you find 332,000 references to that string, and that means that a

28        fraction of those will be – a fair fraction, maybe 10 perfect, and that's a lot of

9

1    Ferguson Decl. Exh. H at 187-426; and Avery Decl. Exh. F at 193-398.  In fact, Sony itself

2    recognized that the problem existed and was applicable to the entire FX series of Laptops in

3    issuing its internal "Technical News" bulletin dated July 30, 2003, entitled, "Subject: No boot or

4    Memory doesn't recognize" (which Sony indicated was applicable to over 150 Vaio models,

5    including the models in the FX series of Laptops).  *See* Ferguson Decl., Exh. A.  Sony indicated

6    that the cause was the solder on the connection of the memory slot (mainly on the "extension

7    memory connector," i.e., Slot 2).  *Id.*, Exh. A at 006.

8        Hence, the numerosity requirement is clearly satisfied.  *Ikonen v. Hartz Mountain Corp.*,

9    122 F.R.D. 258, 262 (S.D. Cal. 1988) ("classes of 20 are too small, classes of 20-40 may or may

10   not be big enough depending on the circumstances of each case, and classes of 40 or more are

11   numerous enough"); *Hopkins v. DeBeers Centenary AG*, 2005 WL 1020868, at *3 (Cal. Super. Ct.

12   April 15, 2005) (as few as 40 members raises a presumption that joinder would be impracticable

13   and class numbering over a million people was not unmanageable).

14        2.    **Common Issues Exist and Predominate**

15        Commonality is satisfied "if here are questions of law or fact common to the class." Fed.

16   R. Civ. P. 23(a)(2).  The commonality requirement is construed "permissibly." *Hanlon v. Chrysler*

17   *Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be common

18   to satisfy the rule.").  The existence of shared legal issues with different factual predicates is

19

20

21        people, will be writing about the Sony Vaio memory slot two problem, okay?

22            Any sorry for the long answer, but the Internet is interesting about personal
         contact versus the way you can glean information from it.  You can – you can
23       actually begin to come to some conclusions about whether something is credible or
         not.  Yes, I do know that people lie on the Internet, but when you encounter
24       hundreds of fairly obviously dispersed people, its – there's almost no conclusion to
         reach except that a lot of people are having the problem.
25

26   *Id.*, Exh. C at 122 (Johnson Tr. at 135:15-136:17).

27   Similarly, there are hundreds, if not thousands, of complaints posted on the Internet by Vaio
     owners complaining of this problem.  A representative sampling from only a few of the many
     websites listing of complaints and discussions of the problems with the memory slot are attached
28   as Exh F to the Avery Declaration.

                                                    10

1    sufficient, as is a common core of facts coupled with disparate legal remedies.[9] *Hanlon*, 150 F. 3d

2    at 1019; *THQ*, 2002 U.S. Dist. LEXIS 7753, at *11.

3            The test for determining whether common questions predominate is whether "the issues

4    which [are] common among the class members would be the principal issues in any individual

5    action, both in terms of time to be expended in their proof and of their importance, and that if a

6    class suit were not permitted, a multiplicity of legal actions dealing with identical basic issues

7    would be required in order to permit recovery by each [absent class member]." *Vasquez*, 4 Cal.3d

8    at 810. Predominance, however, does not require that the claims of every class member present

9    identical questions. *Blackie*, 524 F.2d 891; *Collins v. Rocha*, 7 Cal. 3d 232, 238 (1972). Thus,

10   variations among Class members' circumstances do not defeat class certification. *Blackie*, 524

11   F.2d 891; *Wilner*, 78 Cal. App. 4th at 959-60 (2d Dist. 2000) (commonality of interest found

12   where class members were subject to a common course of misconduct even though they entered

13   into separate transactions with defendant"). Since there is a substantial overlap in the elements of

14   Plaintiffs' claims, they all generally share the same common questions and will be established by

15   the same common proof.

16

17                          **a.      The Elements of Plaintiffs' Claims**

18           Plaintiffs seek relief under the Unfair Competition Law ("UCL"). Cal. Bus. & Prod. Code

19   §§ 17200 *et. seq.*, on behalf of all purchasers of the Laptops in the United States and Canada not

20   otherwise excluded from the Classes. The UCL prohibits "unlawful," "unfair," or "fraudulent"

21   business practices. *Id*. To establish a violation of the UCL, Plaintiffs need only demonstrate that

22   the challenged conduct presented the likelihood of public deception. *Prata v. Superior Court*, 91

23   Cal. App. 4th 1128, 1146 (2d Dist. 2001) ("[t]he test is whether the public is likely to be deceived

24   [and] [t]his means that a section 17200 violation, unlike common law fraud, can be shown even if

25   no one was actually deceived [or] relied upon the fraudulent practice...").

26           Similarly, to state a claim under Cal. Bus. & Prof. Code §§17500 *et seq.*,  it is necessary

27   _____

28   [9]  As indicated above, the Court in the *Hapner* Action involving the related GRX series of Laptops
     determined that the GRX series met this requirement. *See generally* Avery Decl. G.

                                              11

1    only to show that members of the public are likely to be deceived because actual deception or

2    confusion caused by misleading statements is not required. *Day v. At&T Corp.*, 63 Cal. App. 4th

3    325, 331-32 (1st Dist.1998). Further, a violation of §§17500 *et seq.* necessarily results in a

4    violation of the UCL, *see Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), as does a violation of Civil

5    Code §§1572, 1709, 1710, 1770(a)(5), 1770(a)(7), and 1770(a)(9). *See* Comp. ¶60. As the Court

6    in *Nagel v. Twin laboratories, Inc.*, 109 Cal. App. 4th 39, 51-52 (4th Dist. 2003) explained:

> The unfair competition law prohibits any unlawful, unfair, deceptive, or
> misleading business practice. (*Cel-Tech Communications, Inc. v. Los Angeles
> Cellular Telephone Co.* (1999) 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.
> 2d 527l *Prata v. Superior Court* (2001) 91 Cal. App. 4th 1128, 1144, 111 Cal.
> Rptr. 2d 262.) "Section 17200 [of the Business and Professions Code] has been
> interpreted broadly to bar all ongoing wrongful business activity, including
> misleading advertising, in whatever context it presents itself. (*Day v. AT&T Corp.*
> (1998) 63 Cal. App. 4th 325, 332).
> A claim for false advertising requires proof that the defendant, in connection with
> the sale of a product or service, made an untrue or misleading statement regarding
> the product or service. (Bus. & Prof. Code, § 17500, a statement can be true, yet
> still be misleading. (*Day v. AT&T Corp. supra*, 63 Cal. App 4th 325, 332-333, 74
> Cal. Rptr. 2d 55.).

14        Here, there are common issues that predominate concerning whether Plaintiff will be able

15   to establish Defendant engaged in unfair, deceptive and misleading business practices when it

16   marketed and sold the defective notebooks and made untruthful and misleading statements when it

17   advertised these Laptops as having attributes, e.g., memory expandable to 512 MB of RAM, which

18   they clearly did not.

19        Plaintiffs also seek damages and relief under the CLRA for Sony's misstatements and

20   omissions in connection with the marketing and sale of the Laptops. In particular, Plaintiffs allege

21   that Sony, through its material misrepresentations and omissions, violated CLRA §§1770(a)(5)

22   (representation of characteristics that the Laptops did no possess); 1770(a)(7) (representations that

23   the Laptops were of particular standard, grade, or quality when they were not); and 1770(a)(9)

24   (advertising of the product with an intent not to sell it as advertised).

25        Defendant will likely argue that the CLRA requires that Plaintiffs demonstrate reliance on

26   the representations. However, reliance may be presumed where there has been a common

27   misrepresentation of material facts upon which persons could be expected to rely. *Vasquez*, 4 Cal.

28

1   3d at 814-815; *see also Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282,

2   1292 (4th Dist. 2002) (causation may be presumed where material misrepresentations were

3   uniform.)   Here, e.g., Sony concealed from customers the material fact that the Laptops were

4   defective and prone to failure – information that is material to any purchasing decision. *See*

5   *Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548049 (1998).   Further, since the amount of

6   memory available on a computer is such an integral and critical feature of a computer, reliance on

7   such should be presumed.   Moreover, both Plaintiffs Johnson and Sarac did rely on the feature that

8   the memory was expandable and both upgraded their memory through the use of Slot 2.   *Eg.*

9   Ferguson Decl. Exh. C at 103-04 (Johnson Tr. at 58: 3-5; 64: 11-12, 19-25).

10           Plaintiffs also assert claims for breach of express warranty and breach of implied warranty

11   (under the Uniform Commercial Code), as well as breach of the Song-Beverly Act (providing

12   statutory rights to buyers of consumer goods in California to recover damages and other relief if

13   they can establish breach of warranty.)   These claims involve the same common issues of fact and

14   law and are readily certifiable as a class action. *See, e.g., Hicks v. Kaufman & Broad Home Corp.*,

15   89 Cal. App. 4th 908 at 917-18 (2d Dist. 2001) (reversing trail court's denial of class certification

16   with respect to breach of express warranty and implied warranty claims and holding that "proof of

17   breach of warranty does not require proof the product has malfunctioned…during the useful life of

18   the product" and that "[t]he question whether an inherently defective product is presently

19   functioning as warranted goes to the remedy for the breach, not proof of the breach itself").

20           **b.     Common Questions of Law and Fact Predominate Over Any**
             **Questions Affecting Only Individual Members**

21

22           Plaintiffs' claims focus upon the defective laptops, the uniform manner in which Sony sold

23   the notebooks to Class members, and Sony's conduct in failing to advise Plaintiffs and Classes of

24   *the defective nature of the Laptops, and, as a result thereof, whether Defendant violated various*

25

26

27

28

13

1    state laws, including the UCL, CLRA, and the Song-Berverly Act.[10]

2        As the Court in *Chamberlan v. Ford Motor Company*, 402 F. 3d 952, 962 (9th Cir. 2005)

3    stated in denying a petition for review of the certification of a class action under the CLRA:

> The district court's decision in this case is typical in that it presents no error of law
> and is not manifestly erroneous.   Although the district court was succinct, it
> provided detailed, substantive examples of common issues; (1) whether the design
> of the plastic intake manifold was defective; (2) whether Ford was aware of
> alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4)
> whether it failed to do sol (5) whether the facts that Ford allegedly failed to
> disclose were material; and (6) whether the alleged failure to disclose violated the
> CLRA.   The common issues here are plain enough that no further explanation is
> required to justify the district court's decision....Requiring the district court to
> expand its analysis would produce nothing more than a lengthy explanation of the
> obvious.

11        Similarly, here, the common issues of fact and law that exist and predominate include,

12    among other things: (a) whether Sony made false and/or misleading written statements concerning

13    the defects inherent in the Vaio FX laptops; (b) whether Sony knew, or was reckless in not

14    knowing, that its statements about the performance and reliability of the Vaio FX laptops were

15    false and/or misleading; (c) whether the Vaio FX laptops experience memory failure; (d) whether

16    the Vaio FX laptops are defective and are not of merchantable quality; (e) whether Sony concealed

17    that the Vaio FX laptops experience memory failure at extraordinarily and  unacceptably high

18    rates, are inherently defective, and are not of merchantable quality; (f) whether Sony's false or

19    misleading statements of fact and Sony's concealment of material facts regarding the performance

20    of the Vaio FX laptops were likely to mislead consumers; (g) whether Sony has engaged in unfair,

21    deceptive, or unlawful business practices with respect to the advertising, marketing, and sale of

---

[10]   Defendant's conduct regarding the GRX series of Laptops was the basis of certification in the
*Hapner* Action where the Court rejected Sony's argument that common issues did not prevail.
Claims based on written misrepresentations "provide an adequate basis for a finding of common
questions within the class." *Richmond,* 29 Cal. 3d. at 478.   Since Sony was the source of the
information disseminated about the Laptops' performance, including the fact that the Random
Access Memory of the Laptops was expandable to 512 MB through the use of the second memory
slot, questions concerning the existence of the problem, Sony's knowledge of it, as well as Sony's
representations, predominate over any individual questions.   Moreover, issues regarding whether
Sony hid or failed to disclose the defect are also questions that predominate over individual issues.

14

1  Vaio FX laptops; (h) whether Sony has engaged in unfair, deceptive, untrue, or misleading

2  advertising of the Vaio FX laptops; (i) whether Sony has breached its warranties, both implied and

3  express, to Plaintiffs and the members of the Class; and (j) whether, as a result of Sony's

4  misconduct, Plaintiffs and the Class are entitled to damages and/or equitable relief, and if so, the

5  amount and nature of such relief. Compl. ¶ 21.

6        Common issues of law and fact predominate because Plaintiffs will demonstrate Sony's

7  unlawful conduct through proof of its uniform misrepresentations and omissions concerning the

8  Laptops' ability to perform, such as Sony's own specification sheets indicating the Laptops were

9  expandable to 512 MB of RAM. Plaintiffs will demonstrate on a class-wide basis that, in light of

10  its knowledge regarding the defect[11] (including, as well, its manufacture of the second memory

11  slot with inferior materials, as Plaintiff Johnson testified), Sony's limited warranty was

12  unconscionable and that its course of conduct in forcing class members to incur costs to repair the

13  defect in the Laptops of which Sony was well aware and for which Sony was responsible, results

14  in all of Plaintiffs' claims being actionable. The foregoing questions compose the central issues in

15  this litigation and are susceptible to common proof.[12]

16        **3.    Plaintiffs' Claims Are Typical Of Those of the Members of the Class**

17        Rule 23(a)(3) requires that the claims of the representative part be "typical" of the claims

18  or defenses of the class. Representative claims are "typical" if they are reasonably co-extensive

19  with those of absent class members; they need not be substantially identical. *Hanlon*, 150 F. 3d at

20  1020; *THQ*, 2002 U.S. Dist. LEXIS 7753, at *12. *See also Daniels v. Centennial Grous, Inc.*, 16

21  Cal. App. 4th 467, 473 (4th Dist. 1993). "As long as the named representative's claim arises from

22

23  [11] Sony's knowledge of the problem is evidenced, for example, by its internal July 30, 2003 "Technical News" bulletin, entitled, "Subject: No boot or Memory doesn't recognize," applicable

24  to 150 Vaio models, including the FX models. *See* Ferguson Decl., Exh. A, at 006. The bulletin states, "In the case that the System does not boot or System does not recognize the memory, the

25  cause is the solder exfoliation of the connector of the memory slot. (It occurs at the extension memory connector mainly [i.e., Slot 2].)   When this symptom is pointed out, replace the

26  Motherboard or re-solder of the connector." *Id.*

27  [12] Similar common questions regarding the GRX series was one of the reasons for the

28  certification of the classes in the *Hapner* Action.

15

1  the same event, practice, or course of conduct that forms the basis of the class claims, and is based

2  upon the same legal theory, varying factual differences between the claims or defenses of the class

3  and the class representative will not render the named representative's claim atypical." *Jordan,*

4  669 F.2d at 1321. *See generally Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 235

5  (C.D. Cal. 2003).

6       Here, even though the claims need not be identical, they essentially are. The machines

7  suffer from the same common defect. *See, e.g.*, Ferguson Decl. Exh. A (the Sony "Technical

8  News" bulletin). The typicality inquiry focuses on the typicality of the proposed representative's

9  claims as they relate to Sony's conduct and activities. *Classen v. Weller*, 145 Cal. App. 3d 27, 46

10  (1st Dist. 1983). A representative plaintiff's claim is typical if it arises from the same event,

11  practice, or course of conduct that gives rise to the claims of other class members, and if his or her

12  claims are based on the same legal theory. *Id.*

13       In this action, the named Plaintiffs' and the Classes' claims arise out of the same common

14  course of Sony conduct. Here, Plaintiffs Johnson and Sarac each purchased a Laptop with the

15  Memory Slot Problem. The fact that the problem may manifest itself in several ways, such as

16  problems with the monitor or the computer freezing or not booting, is irrelevant. *Shaw*, 91 F.

17  Supp. 2d at 956. The problem is the machine not recognizing the memory. Both Plaintiffs'

18  machines ultimately failed to recognize the memory in Slot 2. That is the same problem already

19  recognized by Sony. Accordingly, Plaintiffs' claims are typical of the rest of the Classes they seek

20  to represent.

21       **4.    Plaintiffs and Their Counsel Will Fairly and Adequately Represent the**

22            **Class**

23       The final requirement of Rule 23(a) is that "the representative parties will fairly and

24  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Plaintiffs and their

25  counsel must not have any conflicts of interest with other class members, the action must not be

26  collusive, and the Plaintiffs must have retained competent counsel. *Hanlon*, 150 F. 3d at 1020;

27  *THQ*, 2002 U.S. Dist. LEXIS 7753, at *20.

28       Plaintiffs are adequate representatives of the Classes (Plaintiff Sarac is not being proposed

16

1  as a representative of the Sub-Class).  There are no conflicts of interest.  Only a conflict that goes

2  to the very heart of the subject matter of the lawsuit will preclude class certification.  *Richmond*,

3  29 Cal.3d at 470.  Here, Plaintiffs do not have any conflicts – much less "irreconcilable conflicts,"

4  – with the members of the Classes.  Plaintiffs' injuries are essentially the same as those of the

5  members of the proposed Classes because all of them purchased a Sony Laptop without adequate

6  information from Sony regarding the Memory Slot Problem and the Laptops' propensity to

7  malfunction due to this defect.  Plaintiffs' have the incentive to pursue relief on behalf of the

8  proposed Classes.  The action is certainly not collusive, and Plaintiffs have retained competent

9  counsel.

10  **David Johnson**

11      Plaintiff Johnson will fairly and adequately represent the Classes.  There are likely only

12  very few persons more capable of representing these particular Classes than Plaintiff Johnson.  Mr.

13  Johnson, a resident of California, has his college degree in computer science and is an expert in

14  computer software and various computer languages. Ferguson Decl., Exh. C at 091-094 (Johnson

15  Tr. at 11:12-16; 12:15-16; 14:8-14; 19: 9-17; 24: 3-19).  He spent many years as a computer

16  software designer and subsequently became involved in computer marketing and became the

17  president of a computer software company. *Id.* Exh. C at 093 (Johnson Tr. at 19:5-8).  In fact, his

18  company received a national award from a corporate IT Association "for having the best customer

19  service in the entire software business that year." *Id.* Exh. C at 126 ( Johnson Tr. at 150:8-12).

20      Mr. Johnson also worked at a company and helped develop one of the earliest personal

21  computers. *Id.*, Exh. C at 092 (Johnson Tr. at 14:8-14).  While he is an expert in computer

22  software, he is also very knowledgeable about computer hardware. *Id.*, Exh. C at 096-097

23  (Johnson Tr. at 32:25; 33:4; 35:3-13.).  In fact, since Mr. Johnson also has extensive experience in

24  computer viruses, he disputed and explained at length in his deposition why Defendant's argument

25  that maybe computer viruses caused the problems with reading the memory in Slot 2 is in error

26  and makes no sense. *Id.*, Exh. C at 096-097 (Johnson Tr. at 36:12-41:5).

27      Thus, Plaintiff Johnson is intimately familiar with customer service and the treatment of

28  customers who purchase consumer products, as well as the computer industry itself.  This is

1   precisely why Johnson knows that the problem with the second memory slot is not a software

2   problem, but a hardware problem, contrary to what Defendant will be arguing.   Further,

3   Defendant's own e-mail with Mr. Johnson indicates that the problem is a "hardware" problem (*see*

4   Ferguson Decl., Exh. G), contrary to what Defendant has argued in the related *Hapner* Action and

5   will likely argue here.

6        After Mr. Johnson purchased his computer, he upgraded the memory using the second

7   memory slot (after properly grounding himself and following the instructions, *id.*, Exh. C at 105

8   [Johnson Tr. at 66:21-67:2]) and the machine worked for a while.   However, his computer

9   experienced memory problems and he personally conducted research to ascertain the nature of the

10  problem and learned that there were numerous persons who experienced the problem with the

11  Vaio machine's inability to read the memory in the second memory slot. *Id.*, Exh. C, p. 113

12  (Johnson Tr. at 100:13-21).  Mr. Johnson did try one of the interim solutions suggested on various

13  websites and that seemed to fix the problem, but only for a very short time.  *Id.*, Exh. C, p. 105.

14  (Johnson Tr. at 66:21-67:2).

15       He also contacted Sony, told Sony that the second memory slot in his FX machine was

16  defective, and asked about a replacement or recall policy, but was told that he would have to pay a

17  fee to have his machine repaired. [13] *Id.*, Exh. C at 102 (Johnson Tr. at 56:4-6) and Exh. F.  (From

18  some of his research it appeared that the motherboard would likely have to be replaced and that it

19  would cost approximately $700 to repair the problem.  *Id.*, Exh. C at 116 (Johnson Tr. at 111:21--

20  112:8; 115:20--117:1).  Sony also said that the problem was a hardware problem.  *Id.*, Exh. C at

21  116 (Tr. at 111:11--112:1); and Exh. G.  In personally looking at the memory slots it is also clear

22  to Plaintiff Johnson that the components in the second memory slot are "inferior" with great

23  potential to break because it was not reinforced with metal as was the first memory slot and

24  appeared to be made with inferior plastic.  *Id.*, Exh. C at 126 (Tr. at 151:15-- 152:10).  (Mr.

25  Johnson did not go further to inspect the soldering on the joints.).

26  _____

[13]  Plaintiff Johnson sent an e-mail through Sony's websites.  Ferguson Decl., Exh G.  At this

27  time, Sony responded on August 8, 2004, Sony's "Technical News" July 30, 2003 bulletin
    regarding the defective memory problem had already been internally issued at Sony. *Compare*

28  Ferguson Decl., Exh. G at 184 *with* Exh. A at 5.

1    Additionally, Mr. Johnson even has a more comprehensive than usual understanding of his

2  role as a class representative. *Id.*, Exh. C at 137-138 (Tr. at 197:11; 201:17). He reads and

3  understands the papers, he communicates with counsel, he knows that he represents others with the

4  same problem, and he is willing to appear at trial (even though it is not required). *Id.*

5    In short, Mr. Johnson will fairly and adequately represent the Class.

6  **Ekrem Sarac**

7    Mr. Sarac will fairly and adequately represent the Class. (Mr. Sarac, a resident of Canada,

8  is not being proposed as a representative of the Sub-Class.) He is an electrical engineer, receiving

9  his undergraduate degree in engineering from the University of Istanbul, in Turkey.[14] Ferguson

10  Decl., Exh. B at 035 (Sarac Tr. at 110:21- 113:23). Plaintiff Sarac has extensive experience with

11  electrical and electronic equipment, working on electrical and switch equipment for many years

12  (after having served his compulsory military service as a lieutenant in the Army). *Id.*, Exh. B at

13  036 (Sarac Tr. at 114:7). He was one of the team members responsible for implementing the

14  entire GSR network throughout Canada. *Id.*, Exh. B at 036 (Sarac Tr. at 116:3-17). While he may

15  not be a computer designer, he is clearly familiar with and able to use electronic equipment,

16  including both computer hardware and software. *Id.*, Exh. B at 036 (Sarac Tr. at 115:11-13).

17    Mr. Sarac purchased his Vaio, relying on the fact that the machine specifically stated that it

18  was "Made in U.S.A." which Mr. Sarac believed was a sign of quality. *Id.*, Exh. B at 048-049

19  (Sarac Tr. at 165:10-22; 166:7). He also purchased it because the memory was expandable to 512

20  MB of RAM. A review of Mr. Sarac's transcript does indicate that while he speaks English, but

21  he does experience difficulty in understanding the nuances that a non-native English speaker

22  sometimes suffers from. Accordingly, the deposition was often very heated as Mr. Sarac was

23  unable to comprehend why defense counsel was attacking him when all he was trying to do was to

24  "tell his story."

25    Mr. Sarac added memory to his machine using Slot 2, carefully following the directions in

26  the user's manual. *Id.*, Exh. B at 072-073. (Sarac Tr. at 258:19-263:6). Although the memory

27  ──────────

[14]  Mr. Sarac emigrated to Canada several years ago and became a Canadian Citizen

28  approximately a year and a half ago. *Id.*, Exh. B at 034. (Sarac Tr. at 108:21-22.).

19

1   worked for a short while, it crashed.  After troubleshooting his computer and conducting extensive

2   research on the Internet, he realized that his Vaio was not reading the memory in Slot 2.  When he

3   removed the added memory module, the machine worked.   Since some of his investigation

4   indicated that the problem was due in part to inadequately soldered contact points on Slot 2, Mr.

5   Sarac very carefully used a soldering iron (which he was already familiar with, using the top of the

6   line model) to re-fuse the contact points on one side of Slot 2 (the other side was unreachable).

7   *Id.*, Exh. B at 023-024. (Sarac Tr. at 65:18-67:24).  The machine immediately read the memory in

8   Slot 2 for a few weeks thereafter, but failed again.  (Mr. Sarac testified at length that the cost to

9   have the machine repaired at Sony was extensive, approximately $1,000 (Canadian), and was far

10  beyond his capacity to pay, particularly in light of the value of the laptop. *Id.*, Exh. B at 054-055

11  (Sarac Tr. at 189:19-192:4).)

12      In short, Mr. Sarac suffered from the same failure of his Vaio FX notebook to read the

13  memory in Slot 2 and he will fairly and adequately represent the Class.

14      Defendant will likely argue that Mr. Sarac will not fairly represent the Class because he

15  testified that he does not want to travel to San Diego to testify at trial. *Id.*, Exh. B at 058 (Sarac

16  Tr. at 202:7-19).  Mr. Sarac is a contract employee who only gets paid if he works.  He does not

17  get vacation time and he is the sole support for his family and infant child.  Accordingly, he does

18  not want to take time off from work since it is very costly personally for him to do so.  However,

19  he clearly testified that he is in contact with counsel, is very willing to communicate by telephone

20  and e-mail, and appeared for his deposition, taking a day off from work to do so. *Id.*, Exh. B at

21  058 (Sarac Tr. at 202:13- 205:4).  If this case goes to trial, Plaintiffs can arrange for a remote video

22  feed so that Mr. Sarac can testify, if it is even necessary for him to do so.

23      Because the interests of the Plaintiffs and the rest of the Class members are fully aligned

24  and counsel is qualified, experienced and able to prosecute this litigation, the adequacy

25  requirement is satisfied.

26  **Plaintiffs' Counsel**

27      Under Fed. R. Civ. P. 23(g), counsel must be able to fairly and adequately represent the

28  Class. The Court is to consider the work counsel has done in identifying and investigating claims,

20

1    counsel's experience in handling class actions, including consumer class actions, counsel's

2    knowledge of the law, and the resources counsel will commit to represent the Class.  The Court

3    may also consider any other matter pertinent to counsel's ability to represent the Class.[15]

4         Both firms representing Plaintiffs have long-standing, substantial experience and expertise

5    in representing plaintiffs in class actions and in consumer actions in particular.  *See* Avery Decl.,

6    Exhs. H and I (firm resumes of Wolf Popper LLP and Hulett Harper Stewart LLP).

7         Plaintiffs and their counsel moved this Court to stay the action in an effort to save the

8    Court and the parties time and expense because if the Hapner class certification is reversed on

9    grounds applicable to this case, then it could (and Defendant would certainly argue that it would)

10   affect the resolution of this action.

11   **C.      The Requirements of Rule 23(b) Are Satisfied**

12        In addition to meeting the conditions imposed by Rule 23(a), a party seeking class

13   certification must also show that the action is maintainable under one of the three subsections of

14   Fed. R. Civ. P. 23(b).  In this action, certification of the nationwide and Canada Class and the

15   California Sub-Class is appropriate under both Rule 23(b)(2) and 23(b)(3).

16   **1.      The Requirements of Rule 23(b)(2) Are Met**

17        A class may be certified under Rule 23(b)(2) where defendants have acted or refuse to act

18   in a manner generally applicable to the class, rendering injunctive relief or declaratory relief

19   appropriate to the class as a whole.  "Generally applicable," as used in Rule 23(b)(2) means that

20   the party opposing the class "has acted in a consistent manner towards members of the class."

21   Wright & Miller, § 1775, at 449.   Sony has certainly acted in a consistent manner towards the

22   notebook owners not only in selling the notebooks alleging that they are upgradeable to 512 MB

23   of RAM, but in refusing to fix the machines or correct the problems being experienced with the

24   ───────────────

[15]  Under California state law, the adequacy requirement considers whether the representative,
25   through counsel, will protect the interests of the class. *Simons v. Horowitz*, 151 Cal. App. 3d 834,
     846 (1st Dist. 1984).  Here, Plaintiffs and their counsel are committed to representing the interests
26   of the Classes. "Adequacy of representation depends on whether the plaintiffs' attorney is
     qualified to conduct the proposed litigation and the plaintiffs' interests are not antagonistic to the
27   interests of the class." *McGhee v. Bank of Am.*, 60 Cal. App. 3d 442, 450 (1st Dist. 1976).  Both
     requirements are satisfied here.
28

21

1    second memory slot, especially knowing of the propensity of the machines to suffer from the

2    problem, as evidence by Sony's issuance of the "Confidential" "Technical News" bulletin.

3         Declaratory or injunctive relief here could certainly be appropriate to the class as a whole

4    since holders of the notebooks could obtain relief through a recall, repair, or replacement policy.

5    In fact, one of Plaintiffs' fundamental objectives in bringing this suit is plainly to obtain equitable

6    relief for the notebook owners in the form of repair of the computers, replacement of the defective

7    parts, or recall of the notebooks.[16]

8         Plaintiffs' alternative prayer for money damages does not preclude Rule 23(b)(2)

9    certification.  The Ninth Circuit has held that "class actions certified under Rule 23(b)(2) are not

10   limited to actions requesting only injunctive or declaratory relief, but may include cases that also

11   seek monetary damages." *Linney v. Cellular Alaska Pshp.*, 151 F. 3d 1234, 1240 (9th Cir. 1998)

12   (quoting *Probe v. State Teacher's Retirement Sys.*, 780 F. 2d 776, 780 (9th Cir.1986).

13        Finally, if this Court deems appropriate, notice and the opportunity to opt-out can be given

14   in a Rule 23(b)(2) certification.  *Molski v. Gleich*, 318 F.3d 937, 951 (9th Cir. 2003).

15        **2.    The Requirements of Rule 23(b)(3) Are Met**

16        Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

17   parties can be served best by settling their differences in a single action. " *Hanlon*, 150 F. 3d at

18   1022: (quoting 7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986) ("Wright

19   & Miller").  There are two fundamental conditions to certification under Rule 23(b)(3): common

20   questions must "predominate over any questions affecting only individual members," and a class

21   resolution must be "superior to other available methods for the fair and efficient adjudication of

22   the controversy." Fed. R. Civ. P. 23(b)(3).

23        As indicated above, common questions not only exist, but predominate in this litigation.

24   *See* §IV.B.2, *supra*.

25   _____

26   [16]  For example, under the §17200 claim, Plaintiffs may secure injunctive relief on behalf of all.
     In affirming the certification of a §17200 claim, the court in *Massachusetts Mutual Life Ins.*, 97

27   Cal. App. 4th at 1291, held "We are in no position to either abandon or ignore the principle set
     forth in *Fletcher* that relief under the UCL, including restitution, is available without proof of

28   individual deception, reliance and injury."

22

1      A class action is also superior to other methods for the fair and efficient adjudication of this

2  controversy. Weighing heavily in favor of class certification is the fact that certification of

3  Plaintiffs' claims is the only economically feasible method for the fair and efficient adjudication of

4  this controversy. It cost in excess of $1,000 to purchase a Vaio FX laptop. Any individual Class

5  member's damages remain modest relative to the time and expense required to properly prosecute

6  these claims, as well as Sony's financial resources. Individual class members have no economic

7  ability or incentive to wage costly and complex litigation against a well-financed Defendant such

8  as Sony.

9      Courts recognize the necessity and propriety of class actions. The United States Supreme

10  Court endorses class certification in cases such as this one: "[c]lass actions...permit the plaintiffs

11  to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v.*

12  *Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a

13  class action were not available"); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal.

14  2004)(class action was superior because "few potential class members could afford to undertake

15  individual litigation against [Defendant] to recover relatively modest damages").

16      Similarly, the California Supreme Court has acknowledged that "'class actions are

17  appropriate where numerous parties suffer injury of insufficient size to warrant individual action

18  and when denial of class relief would result in unjust advantage to the wrongdoer.'" *Linder v.*

19  *Thrifty Oil Co.*, 23 Cal. 4th 429, 446 (2000) (citation omitted).

20      To deny class status to Plaintiffs' claims would effectively permit Sony to retain the

21  monies that it improperly obtained. The *Linder* Court specifically cautioned against such a result:

22  "[W]e have affirmed the principle that defendants should not profit from their wrongdoing simply

23  because their conduct harmed large numbers of people in small amounts instead of small numbers

24  of people in large amounts." 23 Cal. 4th at 446. Prosecution of Plaintiffs' claims on a class-wide

25  basis is the only viable means to resolve Plaintiffs' and other Class members' claims, and the

26  Court should certify this action as a class action.

27

28

1   **V.**     <u>**CONCLUSION**</u>

2       For the reasons set forth above, the Court should grant Plaintiffs' Motion and certify this

3   action to proceed as a class action.

4   DATED: July 31, 2006         HULETT HARPER STEWART LLP

5                            BLAKE MUIR HARPER
JENNIFER A. KAGAN

6                            550 West C Street, Suite 1600
San Diego, CA 92101

7                            Telephone:   (619) 338-1133
Facsimile:    (619) 338-1139

8

9                            WOLF POPPER LLP
LESTER L. LEVY

10                           PATRICIA I. AVERY
EMILY MADOFF

11                           ELIZABETH FERGUSON

12

13

14                           PATRICIA I. AVERY

15                           845 Third Avenue
New York, NY 10022

16                           Telephone:   (212) 759-4600

17                           Facsimile:    (212) 486-2093

18                           Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

24