# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE ARABIAN, MARTIN SAUER, EKREM SARAC, STEVE VARADI, and DAVID JOHNSON<br><br>Plaintiff,<br>vs.<br>SONY ELECTRONICS INC.,<br><br>Defendant. | CASE NO. 05 CV 1741 WQH(NLS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR A STAY** |

HAYES, Judge

The matter before the Court is the Motion to Stay filed by Plaintiffs Arabian, Sauer, Sarac, Varadi, and Johnson ("Plaintiffs"). On July 3, 2006, the Court granted Defendant Sony Electronics, Inc.'s ("Sony") Motion for Partial Stay with respect to the putative class of Sony GRX laptop purchasers. Plaintiffs' Motion to Stay the remainder of the action with respect to FX laptop purchasers is now before the court. The Court takes these matters under submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

## **INTRODUCTION**

Plaintiffs have brought an action against Sony on behalf of persons in the U.S. who purchased Sony Vaio GRX laptops and persons in the U.S. and Canada who purchased Sony Vaio FX laptops. Plaintiffs allege that the entirety of this action is similar to an action pending in state court entitled, *Hapner v. Sony Electronics, Inc.*, Case No. GIC839244 (Superior Court of San

1  Diego County, California) ("*Hapner* action"). In the *Hapner* action, a class has been certified with
2  respect to the GRX laptops only. Plaintiffs claim that both the GRX and FX laptops have
3  essentially the same defect with regard to the memory slots, and now move to stay the action with
4  respect to the FX purchasers until the *Hapner* action is resolved.

5  Sony opposes a stay of the FX portion of the case. Sony claims that the GRX and FX
6  actions are distinguishable in that they involve two separate alleged classes of plaintiffs alleging
7  defects in different products. Based on this distinction, Sony claims that it is not proper to
8  postpone the resolution of the FX case pending the resolution of the GRX claims in the *Hapner*
9  action. Defendant seeks to proceed with the FX case.

10 **BACKGROUND**

11  Sony has marketed, sold, and serviced thousands of Vaio GRX and FX series notebook
12  computers within the U.S. *(*Answer at 2 and 6.) At the time each series was sold, the computers
13  contained two memory slots and were available in various configurations offering differing
14  amounts of installed memory. (*Id.*) Sony has not issued any warnings or recall programs with
15  respect to these notebooks. (*Id.* at 4.)

16  Plaintiffs brought this case as a purported class action to obtain damages and injunctive
17  relief against Sony for alleged defects in the memory slots of the GRX and FX series notebooks.
18  On March 22, 2006, Magistrate Judge Stormes ordered that discovery as to the GRX laptops be
19  stayed because of the *Hapner* action, a parallel GRX class action brought in the San Diego
20  Superior Court. (Order Following Case Management Conference at 2.) However, Magistrate
21  Judge Stormes ordered that discovery as to the FX laptops should proceed as the FX laptops were
22  not part of the *Hapner* action. (*Id.*)

23  Sony moved for a Partial Stay as to the GRX claims, pending the resolution of the *Hapner*
24  action. Rather than oppose Sony's Motion, Plaintiffs attempted to file an untimely-noticed Cross-
25  Motion for Stay of the entire proceeding. On June 19, 2006, the Court granted Sony's Motion for
26  Partial Stay of the proceedings relating to the claims of the GRX Plaintiffs.

27  Plaintiffs had previously argued to Magistrate Judge Stormes that the allegations of defects
28  in the FX notebooks were unaffected by the *Hapner* action and that this portion of the action

1  should proceed.  In Plaintiffs' Case Management Statement and Proposed Discovery Plan, dated
2  March 22, 2006, Plaintiffs opposed staying any portion of the case and expressed a desire to
3  proceed with discovery. (*See* Maxwell Decl. *Ex.* F at 62.)  Plaintiffs stated, "there is nothing in the
4  Hapner Action concerning the FX model series, as no plaintiff in that case purchased an FX
5  model. Thus, there is no basis not to proceed with the instant action."  (*Id*.)  Plaintiffs argued for
6  coordination with plaintiffs' counsel in the *Hapner* action regarding discovery and litigation rather
7  than a stay.  (*Id.* at lines 20-22.)  Plaintiffs' alleged that the defect in the GRX and FX laptops was
8  similar if not the same and that the claims could be most expeditiously dealt with by coordinating
9  discovery between the state and federal court actions.
10       After the Court granted Sony's Motion to Stay the GRX portion of the case, Plaintiffs
11 moved to stay the portion of the case involving the FX series.  *(See* Pl's Mem. of Points and
12 Authorities in Supp. of Mot. for Stay 1.)  Plaintiffs contend that there are multiple common
13 questions of law and fact that exist between the GRX and FX classes of Plaintiffs, including, but
14 not limited to, whether Sony made false and/or misleading statements concerning the alleged
15 defects; whether the laptops experienced memory failure; and whether Sony engaged in unfair
16 business practices with respect to the advertising, marketing, and sale of Vaio GRX and FX
17 laptops.  (*Id*. at 3.)
18       According to Sony Technical Support Engineer Fred Iravani, the GRX and FX series
19 notebooks differ in several ways. (Declaration of Fred Iravani in Support of Sony Electronics
20 Inc.'s Opposition to Plaintiffs' Motion to Stay ("Iravani Decl.") at 2, Exs. A and B.)  First, they are
21 not the same size.  (*Id*.)  The GRX series is wider and longer and weighs about one pound more
22 than the FX series.  (*Id*.)  Second, the memory slots of the GRX and FX series of notebooks are
23 made of different materials, are given different part numbers by Sony, and are not interchangeable.
24 (*Id*.)  Finally, the memory sockets on the FX laptops contain a metal piece that is not present in the
25 GRX laptops.  (*Id*.)
26       Plaintiffs do not dispute that the GRX and FX models are different.  (Reply at 2 n. 3.)
27 However, Plaintiffs contend that purchasers of both the GRX and FX notebooks complain of the
28 same problem with the memory slots: "the computer stops reading all of the memory that Sony has

said the laptop contains, in particular, it fails to read the memory available in Slot 2." (Complaint, at 33.) Plaintiffs also allege that the *cause* of the problem with the memory slots is the same for the GRX laptops as for the FX laptops. Plaintiffs point to a Sony Technical News bulletin, dated July 30, 2003, where Sony informed employees that if owners of the either the FX or GRX laptops complained of either the computer not booting or not recognizing memory, that "the cause is the solder exfoliation of the connector in the memory slot." (See Reply Declaration of Patricia L. Avery in Support of Motion for Stay ("Avery Reply Decl.") at Ex. A). Plaintiffs contend that this same defect, and the same cause of the defect, is alleged by the plaintiffs in the *Hapner* action with regard to the GRX notebooks, and that the Court should stay the FX portion of the litigation pending the outcome of the GRX case in state court.

**STANDARD OF REVIEW**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. American Water Works & Elec. Co.*, 299 U.S. 248, 254 (1936). The use of this power requires exercise of sound discretion. *Id.* Additionally, it is necessary to weigh competing interests of those that will be affected by the stay. *Id.* at 254- 255. *See CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). These competing interests include: possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX,* 300 F.2d at 268. The moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis,* 299 U.S. at 255.

A district court has the discretion to evaluate a motion to stay pending resolution of a concurrent state court proceedings under the *Colorado River* doctrine. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). A district court is justified in dismissing or staying a federal proceeding when it determines that (1) a parallel proceeding exists in a state court, and (2) "exceptional circumstances" exist that warrant abstention. *See Colorado River*, 424

1  U.S. at 819.  "Parallel proceedings exist when substantially similar parties are contemporaneously
2  litigating substantially similar issues in both the federal and state courts." *Enfission, Inc. v. Leaver*,
3  408 F. Supp. 2d 1093, 1096 (W.D.Wash. 2005) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416
4  (9th Cir. 1989).  The Ninth Circuit has held that "any substantial doubt as to whether the state
5  proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay." *Id.*
6  (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

## DISCUSSION

8  Sony contends that a stay of the FX case pending the resolution of the *Hapner* action in
9  state court may result in possible damage and unfair prejudice to Sony.  (Opp'n 6-7.)  Sony argues
10 that awaiting the resolution of the GRX case in state court might take several years, which would
11 unfairly prejudice Sony by leaving meritless claims in limbo.  (*Id.* 6.)  Sony contends that
12 prejudice would result from an increased potential for spoliation of evidence as time passes, and
13 diminution of the value of the requested relief to the class.  (*Id.*)  Absent class members are more
14 likely to get rid of their laptops and, even if they keep them, Sony argues that it will become more
15 difficult over time to determine what defects, if any, were present at the time of manufacturing and
16 which are the result of age.  (*Id.*)  In response, Plaintiffs assert that a stay of the FX case will not
17 unfairly prejudice Sony because the claim that the two laptop models have the same defect is
18 meritorious.  (Reply 3.)  Plaintiffs also contend that the potential for spoliation of evidence is a
19 "red herring" because Sony is not entitled to take discovery of absent class members.  (*Id.* at 5
20 (citing *Danzig v. Superior Court*, 87 Cal. App. 3d 604, 612 (1978)).)

21 The Court finds that staying the FX action creates a potential for spoliation of evidence.
22 The resolution of the *Hapner* action could take years, during which time evidence needed to
23 litigate the FX case in federal court could be destroyed or become stale.  As time goes on, absent
24 class members are more likely to dispense with their laptops and manufacturing defects may
25 become more difficult to detect. Although no determination has been made as to whether Sony can
26 take discovery of absent class members, it is possible that the necessity for such discovery will be
27 demonstrated.  Therefore, the Court finds that there is a fair possibility that Sony would be unfairly
28 prejudiced by a stay of the FX case until the resolution of the *Hapner* action.

1  Because there is a fair possibility that a stay will work damage to Sony, Plaintiffs must
2 make out a clear case of hardship or inequity in being required to go forward with the FX case.
3 *See Landis*, 299 U.S. at 255.  Plaintiffs contend that there will be duplication of time, effort and
4 resources of the court, as well as duplicate class certification motions, if the FX portion of the case
5 is not stayed.  (*See* Reply 5.)  Plaintiffs also contend that staying the FX portion of the case
6 pending the outcome of the *Hapner* action is needed to avert the possibility of inconsistent rulings
7 on discovery and dispositive motions, as well as inconsistent verdicts.  (Pl.'s Mem. of Points and
8 Authorities in Supp. of Mot. for Stay 4.)  Plaintiffs point to a Sony news bulletin as evidence that a
9 defect in both the GRX and FX notebooks is caused by "the solder exfoliation of the connector in
10 the memory slot."  (Avery Reply Decl., Ex. A.)

11  However, the Court concludes that because the two notebook models have different
12 memory slots, further discovery is required to determine whether solder exfoliation affects the
13 laptops in the same way or leads to the same alleged defect.  Plaintiffs have not established that a
14 stay would reduce the time and effort spent on discovery and have failed to make out a clear case
15 of hardship or inequity that would merit the granting of a stay.

16  Another factor that the Court must evaluate is whether granting the stay will simplify the
17 issues, proof, and questions of law in the case.  *See CMAX*, 300 F.2d at 268.  Plaintiffs contend
18 that evidence obtained as part of the *Hapner* action regarding GRX laptops is applicable to the
19 issues of proof and causation in the FX portion of the federal case.  In response, Sony asserts that a
20 stay of the FX case will confuse rather than simplify the issues, as the jury would have to
21 understand how differences in the memory slots of the two notebooks might impact the allegations
22 of a defect.  Sony contends that a stay would not simplify the issues because a judgment in the
23 *Hapner* action will not be res judicata as to the FX Plaintiffs, because the federal and state actions
24 involve different parties and different claims which would be proved with different evidence.
25 Plaintiffs do not address Sony's contention that the state court action would not be res judicata as
26 to the FX proceeding.

27  Although evidence from the *Hapner* action may prove to be relevant to the FX portion of
28 this case, this is not established.  In addition, there is considerable doubt that the resolution of the

*Hapner* action would be res judicata as to the FX portion of the case due to the differing parties and claims as between the two actions. Because it is uncertain that the outcome in state court would simplify or resolve any of the issues in the FX portion of the case, the Court concludes that there is not sufficient evidence that a stay of the FX case would simplify the issues, proof and questions of law.

The Court concludes that the balance of the competing interests under *Landis* and *CMAX* weighs against a stay of the FX portion of the case.

In addition, although neither party cited to the *Colorado River* doctrine in their papers, the *Colorado River* doctrine is also applicable to motions to stay federal proceedings pending a concurrent state court action. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993); *see also Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1372 (9th Cir. 1990). Application of the *Colorado River* doctrine in federal court "presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Although "exact parallelism" between the federal and state proceedings is not required in order for the federal court to stay a proceeding, *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989), the "existence of a substantial doubt as to whether state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp.*, 12 F.3d at 912. In the instant case, the state court GRX action and the FX portion of the federal court proceeding are sufficiently distinguishable that such a doubt exists, and a stay would not be warranted under the *Colorado River* doctrine. Although the possibility exists that resolution of the GRX case in state court might have an impact on the FX portion of the instant matter, the Court concludes that there is substantial doubt that the resolution of the state court GRX action would resolve the claims brought by the FX Plaintiffs in federal court.

Accordingly, the Court denies Plaintiffs' Motion for a Stay.

//
//
//

1 **CONCLUSION AND ORDER**

2     For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for a Stay (Doc. No. 41).

3 **IT IS SO ORDERED.**

4 DATED: October 10, 2006

5                                 **WILLIAM Q. HAYES**

6                                 United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28