# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE ARABIAN, MARTIN SAUER, EKREM SARAC, STEVE VARADI, and DAVID JOHNSON, On Behalf of Themselves Individually and All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>SONY ELECTRONICS INC.,<br><br>Defendant. | CASE NO. 05-CV-1741 WQH (NLS)<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>(Doc. # 43) |

HAYES, Judge:

The matter before the Court is Plaintiffs' "Motion for Certification of Action As a Class Action" ("Motion for Certification"). (Doc. # 43.)

**I.   Background**

On September 8, 2005, Plaintiffs[1] filed this action for monetary damages and injunctive relief against Defendant Sony Electronics, Inc. ("Sony") on behalf of (1) "[a] nationwide Class of all persons in the United States who purchased Sony Vaio GRX laptops"; and (2) "[a] Class of all persons in the United States and Canada who purchased Sony Vaio FX laptops." (Compl. ¶ 18.) Additionally, Plaintiffs have proposed the following sub-class: "All Class members who purchased the FX series

---

[1] Plaintiff David Johnson was not a named Plaintiff when this action was originally filed. He intervened in this action, with the consent of Sony.

1 of Laptops in the State of California." (Mem. Supp. Mot. Class Certification at 7.)

2 Plaintiffs' Complaint alleges that "Sony has marketed, advertised, sold, and serviced its Sony Vaio GRX and FX series laptop/notebook computers ... through the use of misleading information concerning the memory capacity of the machines." (*Id.* ¶ 2.) Specifically, Plaintiffs allege that the Sony Vaio GRX and FX series computers are normally sold with either 128 or 256 megabytes ("MB") but include the specific feature that the memory is expandable to 512 MB of RAM, configured over two memory slots. (*Id.* ¶ 29.) Plaintiffs allege that the second memory slot of these computers contain a manufacturing defect which can result in the computer being unable to read the second slot's available memory, thus making half of the advertised memory capacity of 512 MB of RAM unavailable to the user. (*Id.* ¶¶ 29-33.)

Based upon these allegations, Plaintiffs make the following claims under California law: (a) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (b) False and Misleading Advertising, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (c) violations of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (d) violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq*; (e) breach of express warranty pursuant to Cal. Commercial Code § 2313; and, (f) breach of the implied warranty of merchantability pursuant to Cal. Commercial Code § 2314. (Compl. ¶ 7.)

On July 3, 2006, this Court stayed the portion of this action dealing with the GRX series of laptop computers because of the pendency of a state court proceeding, *Hapner v. Sony Electronics, Inc.*, Cause No. GIC839244 (Superior Court of San Diego County, California), where a class had been certified with respect to the alleged GRX series memory-slot defect.[2] (Doc. # 38.) As the *Hapner* action did not involve the FX series computers, this action was not stayed as to that series.

---

[2] In *Hapner*, the trial court declined plaintiff's request to certify a class of all United States purchasers of Vaio GRX Series Notebook computers because of insufficient commonality of claims. Instead, the trial court certified the following limited class:

> All persons or entities in the United States who are original purchasers of Sony Vaio GRX Notebook computers from Sony or from an authorized reseller, and in which the memory connector pins for either of the two memory slots were inadequately soldered, impeding the recognition of installed memory causing boot failures, and other problems.

*Sony Elecs. Inc. v. Superior Court*, 145 Cal. App. 4th 1086, 1091 (Cal. Ct. App. 2006). The California Court of Appeals subsequently overturned the trial court's certification of this limited class. *See id.* at 1096-97.

On July 31, 2006, Plaintiffs filed their Motion for Certification pursuant to Federal Rule of Civil Procedure 23, asking this Court to certify this action to proceed as a class action on behalf of all persons in the United States and Canada who purchased Sony Vaio FX series laptop computers. Sony opposes the Motion. On January 16, 2007, after receiving written briefs and evidentiary materials from both sides, the Court heard oral argument from counsel.

## II.     Legal Standard for Class Certification

Federal Rule of Civil Procedure 23 ("Rule 23") governs class actions. "As the party seeking class certification, [plaintiff] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Before certifying a class, "the trial court must conduct a 'rigorous analysis'" to determine whether a plaintiff has met the Rule 23 requirements.[3] *Id.* (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).

The four requirements of Rule 23(a) are: "(1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to class); (3) typicality (named parties claims or defenses are typical ... of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Mego Fin. Corp. Sec.*

---

[3] Plaintiffs assert that since certification is conditional and may be altered before final judgment, *see* Fed. R. Civ. P. 23(c)(1)(C), "a court should err in favor of, not against, allowing certification." (Plfs.' Reply Mem. at 1.) However, the Ninth Circuit has taught that a district court should not avoid its responsibility to conduct a rigorous analysis because certification is conditional:
> Conditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule have been substantially met. The purpose of conditional certification is to preserve the Court's power to revoke certification in those cases wherein the magnitude or complexity of the litigation may eventually reveal problems not theretofore apparent. But in this case the District Court seemed to brush aside one of the requirements of Rule 23(b)(3) by stating that at this time 'analysis of the individual versus common questions would be for the Court to act as a seer.' However difficult it may have been for the District Court to decide whether common questions predominate over individual questions, it should not have sidestepped this preliminary requirement of the Rule by merely stating that the problem of individual questions 'lies far beyond the horizon in the realm of speculation.'

*In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974).

*Litig. v. Nadler*, 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted).[4]

In addition to showing that each of Rule 23(a)'s requirements are met, Plaintiffs also must show they satisfy Rule 23(b) in one of two ways: (1) under subsection (b)(2), if the party opposing the class has acted or refused to act on grounds applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole; or, (2) under subsection (b)(3), if the questions of law or fact common to the class "predominate" over questions affecting individual members, and, on balance, a class action is superior to other methods available for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b).[5]

In analyzing whether a plaintiff has met his burden to show that the above requirements are satisfied, a court is to "analyze[] the allegations of the complaint and the other material before [the court] (material sufficient to form reasonable judgment on each [Rule 23] requirement)." *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975) (noting further that a court is to take the substantive allegations in the complaint as true); *see also Hanon*, 976 F.2d at 509 (finding that the court may consider evidence to ascertain whether Rule 23 has been met although the evidence relates to the

---

[4] Rule 23(a) provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[5] Rule 23(b) states, in pertinent part:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
. . .
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
Fed. R. Civ. P. 23(b). The parties agree that the provisions of Rule 23(b)(1) are inapplicable to this action.

1 merits); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006) ("[B]ecause 'the
2 class determination generally involves considerations that are enmeshed in the factual and legal issues
3 comprising the plaintiff's cause of action,' a court must often look behind the pleadings 'to evaluate
4 carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule
5 23(a).'") (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (citations and internal
6 quotation marks omitted)).  And while a court should not conduct a hearing on the merits of the
7 plaintiffs' claims when determining class certification, *see Valentino*, 97 F.3d at 1232, the issue of
8 certification "generally involves considerations that are enmeshed in the factual and legal issues
9 comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).
10 In summary, "notwithstanding its obligation to take the allegations in the complaint as true, the Court
11 is at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence
12 may also relate to the underlying merits of the case." *In re Unioil Secs. Litig.*, 107 F.R.D. 615, 618
13 (C.D. Cal. 1985).

14      A district court is granted "broad discretion" to determine whether the Rule 23 requirements
15 have been met. *Zinser*, 253 F.3d at 1186; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,
16 461 (9th Cir. 2000) ("The district court's decision certifying the class is subject to a very limited
17 review and will be reversed only upon a strong showing that the district court's decision was a clear
18 abuse of discretion.") (quotations omitted).

19 **III.   Discussion**

20      In their Motion for Class Certification, Plaintiffs ask the Court to certify the following Class
21 and Sub-Class:

22     **Class:** All persons or entities in the United States and Canada, who purchased FX
series of Laptops. Excluded from the Class are Defendant, its affiliates, employees,
23     officers and directors, persons or entities which distribute or sell the Laptops, the
Court, and the legal representatives, heirs, successors or assigns of any such excluded
24     party.

25     **Sub-Class:** All Class members who purchased the FX series of Laptops in the State
of California. Excluded from the Class are Defendant, its affiliates, employees,
26     officers and directors, persons or entities which distribute or sell the Laptops, the
Court, and the legal representatives, heirs, successors or assigns of any such excluded
27     party.

28

(Mot. Class Certification at 1 (emphasis in original).)[6] Plaintiffs further ask the Court to certify Plaintiff David Johnson (a California resident) as representative of the Class and Sub-Class, Plaintiff Ekrem Sarac (a Canadian resident) as representative of the Class, and Plaintiffs' counsel as Class Counsel.

The Court now turns to an analysis of the requirements of Rule 23.

**A.     Rule 23(a) Requirements**

**1.     Rule 23(a)(1) - Numerosity**

The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Ninth Circuit has held that this requirement can be satisfied with a class of as little as 39 members, particularly if it is impracticable for the class members to be joined in the suit (e.g., because the size of each individual claim is relatively small or because the members are geographically diverse). *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982); *cf. Doe v. Los Angeles Unified Sch. Dist.*, 48 F. Supp. 2d 1233, 1239 (C.D. Cal. 1999) ("The exact size of the class need not be known so long as general knowledge and common sense indicate that it is large."). Plaintiffs submit evidence indicating that Sony sold hundreds of thousands of FX laptops in the United States. (Ferguson Decl. ¶ 6, Ex. D.) Because of the immense size of the proposed Class (and Sub-Class), and the obvious impracticability of joining all purchasers of FX laptops into a single suit, the Court finds that the numerosity requirement is satisfied.

**2.     Rule 23(a)(2) - Commonality**

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). According to the Ninth Circuit:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

---

[6] Plaintiffs proposed the Sub-Class because the Song-Beverly Consumer Warranty Act, Cal. Civil Code §§ 1790 *et seq.*, only applies to goods purchased in California. (Mem. Supp. Mot. Class Certification at 8 n.6.)

In its briefing, Sony does not challenge the commonality requirement of Rule 23(a)(2), instead saving its arguments for the related, but more rigorous, "predominance" requirement of Rule 23(b)(3). Plaintiffs also focus their arguments on the Rule 23(b)(3) requirement (i.e., whether the questions of law or fact common to the members of the class predominate over any questions affecting only individual members). Given the permissive construction of Rule 23(a)(2), the Court likewise will assume that Rule 23(a)(2)'s commonality requirement has been satisfied.

### 3.     Rule 23(a)(3) - Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quotation omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quotation omitted).

Sony contends that each of the proposed Class representatives, Johnson and Sarac, are subject to unique defenses, such that they fail to meet the typicality requirement. For instance, Sony argues that *both* proposed representatives will be subject to the following unique defenses: failure to qualify as a "consumer" under the Consumer Legal Remedies Act because both purchased their laptops for commercial purposes; and failure to satisfy California's vertical privity requirement (because they bought their computers from third parties, rather than from Sony) as required for a claim of breach of the implied warranty of merchantability. Sony further argues that Johnson's claims are subject to a statute-of-limitations defense (i.e., Johnson purchased his FX laptop on August 23, 2001 and filed suit September 8, 2005, allegedly after the four-year limitations period expired) as well as unique defenses

1  regarding his self-professed sophistication as a computer expert. Sony further contends that Sarac is
2  subject to unique causation and comparative fault defenses because he made repeated failed attempts
3  to "re-melt" the memory connector pins on his laptop without having it examined by an expert. Sony
4  finally contends that Sarac is subject to a unique spoilation of evidence defense because he destroyed
5  and discarded relevant evidence (i.e., he "re-melted" the memory connector pins, he discarded the
6  original RAM module, and he erased information from his hard drive (Sarac Dep. at 30-32, 48-49))
7  after he contemplated litigation and again after he filed suit.

8  Plaintiffs offer specific rebuttals to some of these arguments. For instance, they argue that
9  Sony fraudulently concealed the memory slot defect, therefore the accrual of the statute of limitations
10 was tolled as to Johnson and as to all Class members. Sony responds that such an argument still leads
11 to individual considerations of when Johnson (as well as other Class members) learned of the alleged
12 defect. More generally, Plaintiffs argue that the defenses named by Sony are likely to be shared by
13 many of the prospective Class members, making those defenses more typical than atypical.[7] They
14 posit that many members of the proposed Class might face a statute of limitations defense, many might
15 have attempted to solder their computers, many might have discarded their RAM modules, many
16 might have a similar computer sophistication as Johnson, and many (or most) might have bought their
17 computers from a third party.

18 When the alleged defenses applicable to each representative are considered in combination,
19 there is a significant danger that absent Class members would suffer by the time and preoccupation
20 both Johnson and Sarac would have to devote to the defenses unique to them. *See State of Alaska v.*
21 *Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("[W]hen named plaintiffs are
22 subject to unique defenses which could skew the focus of the litigation, district courts properly
23 exercise their discretion in denying class certification."). This conclusion is reinforced when
24 considering the contrasting facts of two of the leading Ninth Circuit cases on the issue, *Hanon v.*
25 *Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th
26 Cir. 1998).

27

28  [7] Plaintiffs dispute that any of the defenses are actually meritorious. But that inquiry is not before the Court at this time.

1  In *Hanon*, the Ninth Circuit affirmed a denial of class certification on the basis that the proposed class representative failed to meet the typicality requirement. In so holding, the Court stated: "a named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* at 508 (quotation omitted). Specifically, the Court found that the proposed class representative's reliance on integrity of the market (an element of his securities fraud action) "would be subject to serious dispute, not typical of defenses which could be raised against other members of the proposed class, as a result of his extensive experience in prior securities litigation, relationship with his lawyers, practice of buying a minimal number of shares of stock in various companies, and uneconomical purchase of only ten shares of stock in defendant corporation." *Id.* (citation omitted). "Because of [the proposed representative]'s unique situation," the Court concluded, "it is predictable that a major focus of the litigation will be on a defense unique to him. Thus, [the proposed representative] fails to satisfy the typicality requirement of Rule 23(a)." *Id.* at 509.

By contrast, the Ninth Circuit in *Hanlon* affirmed a finding of typicality because of the "broad composition of the representative parties" and the "narrow focus" of the relief sought. *Hanlon*, 150 F.3d at 1020. The Court stated:

> In this instance, the broad composition of the representative parties vitiates any challenge founded on atypicality. The representative parties comprise persons from every state, representing all models of Chrysler minivans and include minivan owners whose latches remain operable. The narrow focus of the proposed class was to obtain a defect-free rear liftgate latch in Chrysler minivans owned by class members, or receive adequate non-personal injury compensatory damages. Given these limited objectives and the broad composition of the representative parties, the representative claims were sufficiently typical to pass muster under Rule 23(a)(3).

*Id.*

The situation here is closer to that in *Hanon* than to that in *Hanlon*. The combination of potential defenses Johnson and Sarac are likely to face appears to be similarly unique as those facing the plaintiff in *Hanon*. And here, Plaintiffs have not supplied a "broad composition" of representative parties to vitiate the atypicality challenge, as was the case in *Hanlon*. Therefore, the Court finds that Plaintiffs have failed to satisfy the Rule 23(a)(3) typicality requirement.

This finding alone requires the Court to deny the Motion for Class Certification. *See Zinser*, 253 F.3d at 1186 ("As the party seeking class certification, [plaintiff] bears the burden of

1  demonstrating that she has met <u>each</u> of the four requirements of Rule 23(a) and at least one of the
2  requirements of Rule 23(b).") (emphasis added). However, the Court will continue its analysis of the
3  Rule 23 requirements.

####    4.     Rule 23(a)(4) - Adequacy

5  The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately
6  protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process
7  concerns, absent class members must be afforded adequate representation before entry of a judgment
8  which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).
9  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel
10 have any conflicts of interest with other class members and (2) will the named plaintiffs and their
11 counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion*
12 *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

13 While Sony does not challenge the adequacy of Plaintiffs' counsel or of Johnson, Sony does
14 challenge Sarac's adequacy on the basis that he has stated that he would not attend any trial in this
15 matter, due to work obligations. Sarac, a Canadian resident, indicates that although he will not attend
16 a trial in California, he is willing to give video or tele-conference testimony at trial and he is otherwise
17 "willing to give any time necessary outside of my working hours to further the prosecution of this
18 case." (Sarac Decl. ¶¶ 2 & 4.) Sarac further notes that he attended a full-day deposition and has
19 responded to Sony's discovery requests. (*Id.* ¶ 5.)

20 When determining adequacy, courts consider whether the named representative "will ... serve
21 the necessary role of 'check[ing] the otherwise unfettered discretion of counsel in prosecuting the
22 suit.'" *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (quoting *Weisman v. Darneille*, 78
23 F.R.D. 669, 671 (S.D.N.Y. 1978)). Here, it is difficult to see how a representative would be able to
24 check the discretion of trial counsel when the representative is in a different country for the trial's
25 entire duration. For this reason, the Court finds that Sarac does not satisfy the adequacy requirement.

26 However, Plaintiffs' submissions, *see* Pls.' Mem. Supp. Mot. Class Cert. at 17-21, demonstrate
27 that Johnson (who is proferred as a representative for the entire proposed Class and Sub-Class), as
28 well as Plaintiffs' counsel, satisfy the adequacy requirement.

### B.     Rule 23(b) Requirements

As set out above, in order for a class to be certified, Plaintiffs must demonstrate that the requirements of one of the three subdivisions of Rule 23(b) are satisfied.  Here, Plaintiffs assert that certification is appropriate under Rule 23(b)(2), as well as Rule 23(b)(3).

### 1.     Rule 23(b)(2) - Primarily Injunctive or Declaratory Relief

Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Although the rule is silent as to this issue, ... '[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages.'"  *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) (quoting *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)).  However, "in order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief."  *Id.* (citing *Probe*, 780 F.2d at 780; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1240 & n.3 (9th Cir. 1998)).  Stated differently, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966).

In this case, Plaintiffs' prayer for relief lists two substantive remedies:

> B.     Damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;
> C.     An order requiring Sony to immediately cease its wrongful conduct as set forth above; enjoining Sony from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful, unfair, and deceptive business acts and practices complained of herein; ordering Sony to engage in a corrective notice campaign; and requiring Sony to refund to Plaintiffs and all members of the Class the funds paid to Sony for these defective products ....

(Compl. at 16.)  The first of these remedies asks for monetary damages, while the second asks for both injunctive relief and monetary damages (i.e., refunds).  It does not appear that the requests for monetary damages can be fairly termed "secondary" to the requests for injunctive relief.  Instead, the following passage from *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) is instructive:

> [W]e would be reluctant to allow a request for injunctive relief to provide the basis for federal jurisdiction in a case, such as this one, where that relief does not appear to be

> the primary object of the litigation. In this case Plaintiffs seek monetary compensation for consumers who relied on Defendants' misleading advertising. We recognize that Plaintiffs also ask the court to enjoin Pfizer and its co-defendants from selling their anti-lice products in ineffective formulations, or from advertising their products as effective. But if Plaintiffs succeed in obtaining a significant award of monetary damages, they will likely accomplish what we believe to be their essential goal in this litigation without the added spur of an injunction.
> We therefore distinguish this case from those in which it is apparent that injunctive relief is the primary relief sought. Such actions are properly brought under Rule 23(b)(2)....

*Id.* at 860 (citation omitted). Likewise, in this case, if Plaintiffs succeed in obtaining a significant award of monetary damages (including refunds), injunctive relief would likely be unnecessary.

Moreover, it has been over four years since Sony sold or marketed the FX series laptops. (Abary Decl. ¶ 4; Stewart Decl. ¶ 2.) Because of this, it appears there is very little threat of continuing harm, and therefore, Plaintiffs' request for injunctive relief seems largely moot. *Cf. MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."). In any event, the request for injunctive relief appears to be of secondary importance to the request for monetary damages. Therefore, Plaintiffs have failed to establish that the proposed Class and Sub-Class meet the requirements of Rule 23(b)(2).

### 2.     Rule 23(b)(3) - Predominance of Common Questions

Rule 23(b)(3) requires that questions of law or fact common to the members of the class "predominate" over questions affecting only individual members, and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, the Court need only consider whether Plaintiffs have satisfied the "predominance" requirement.

Rule 23(b)(3)'s "predominance" standard requires a stronger showing by plaintiffs than Rule 23(a)'s "commonality" standard. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In contrast to Rule 23(a)(2) [i.e., the "commonality" requirement], Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single

adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

As an initial matter, Plaintiffs assume that California law will govern the claims of all members of the proposed Class, no matter where they live in the United States or Canada; no matter where or from whom they purchased their FX series laptop; and no matter where they might be if and when their laptop ceased to function as advertised or expected. Plaintiffs base their contention solely on the fact that Sony is headquartered in San Diego, California. (Avery Decl., Ex. A.) Otherwise, Plaintiffs have presented no evidence linking California to the allegations concerning the entire Class. (By contrast, the proposed Sub-Class is defined as Class members who purchased their computers in California.)

Defendant submits an affidavit from an employee stating that Defendant assembles, markets and distributes Vaio laptops "in the United States," and Defendant also provides technical support and repair services for Vaio laptops "in the United States." (Stewart Decl. ¶ 2.) The affidavit does not specify any further as to where in the United States these activities occur. The affidavit further states that Defendant did not design or manufacture the FX series laptops; that was done by a Japanese affiliate of Defendant. (*Id.*) Also, Defendant does not operate, market or have assembly or service facilities in Canada. (*Id.*) Instead, "Sony of Canada Ltd.," which is not a parent or subsidiary of Defendant, markets and distributes Vaio products in Canada. (*Id.*) Based on this latter evidence, Sony challenges whether California law would apply to those who purchased FX laptops in Canada.

As set out above, Plaintiffs bear the burden of establishing that class certification is appropriate. *See Zinser*, 253 F.3d at 1186. The Ninth Circuit has stated that "class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members." *Hanlon*, 150 F.3d at 1022 (noting, however, that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action"). This choice of law inquiry can be a "central issue" to the Rule 23(b)(3) analysis. *Zinser*, 253 F.3d at 1186.

There is a presumption against California law being given extraterritorial effect when the wrongful act as well as the injury occurred outside California. *See Diamond Multimedia Sys., Inc. v.*

1  *Superior Court*, 19 Cal. 4th 1036, 1060, 968 P.2d 539, 554 (Cal. 1999) (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)).  The Unfair Competition Law does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222-23 (1999).  "Indeed, beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California raises significant due process problems." *Churchill Village, L.L.C. v. General Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985); *Norwest Mortgage, Inc.*, 72 Cal. App. 4th at 225).  In order for California's "law to be selected in a constitutionally permissible manner, [California] must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co.*, 472 U.S. at 818 (quotation omitted).

Here, Plaintiffs have failed to demonstrate that California law would apply to purchasers of FX laptops in Canada.  Plaintiffs submit evidence that Sarac's FX laptop, purchased in Canada from a Canadian entity, has "Made in USA" inscribed on it.  They also point out that the Sony technical support phone number for Canadian customers is the same as the number for customers in the United States.  However, Plaintiffs have failed to produce evidence indicating that FX series laptops with the inscription "Made in the USA," were assembled in or distributed from California.  They also fail to show that the technical support number originates from California.  They further fail to show that Defendant made any representations of fact to Canada.  They also do not rebut Defendant's evidence that, as a general matter, FX laptops are sold and serviced in Canada by non-party Sony of Canada, Ltd.[8]  In short, Plaintiffs have not made an adequate showing that it would be permissible, under the United States Constitution or under California law, to apply to law of California to *all* purchasers of FX laptops in Canada.

---

[8] Plaintiffs point to an "extracted ... sampling" of "complaints from Sony's databases" in an attempt "to establish ... that hundreds of Canadian residents own a Vaio FX series laptop." (Ferguson Decl. ¶ 12.)  The fact that the complaints of some Canadian FX laptop owners are in Sony's database does not establish where or from whom the residents purchased their laptops.  Therefore, it does not rebut the specific evidence offered by Sony that non-party Sony of Canada Ltd. markets and distributes Vaio products in Canada.  (Stewart Decl. ¶ 2.)

1  As relevant to this issue, Plaintiffs offer no discussion of Canadian consumer protection law, or how that law might be similar to the California consumer protection laws on which they base their claims. The relevant laws of California and Canada vary significantly. For instance, the limitations period under the consumer protection statutes of each Canadian Province varies from one to six years, depending upon--in some cases--when the claim arose, and--in other cases--the nature of the claim. (Maxwell Decl., Exs. B-E.) In Quebec, vertical privity is not required for implied warranty claims, *see* Maxwell Decl., Ex. D, R.S.Q., c. P-40.1 § 53, while California has a vertical privity requirement, *see U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1441 (Cal. Ct. App. 1991). Quebec and British Columbia vary on whether proof of reliance is required in false advertising claims and how it is proven. *Compare* Maxwell Decl., Ex. D, R.S.Q., c. P-40.1 § 253, *with* Maxwell Decl., Ex. A, *Knight v. Imperial Tobacco Canada, Ltd.*, 2006 BCCA 235. Meanwhile, the issue is currently undecided under California law. *See Pfizer, Inc. v. Superior Court*, 45 Cal. Rptr. 3d 840 (holding that Proposition 64 added a reliance element to misrepresentation claims brought under either the Unfair Competition Law or the False Advertising Law), *rev. granted*, 146 P.3d 1250 (Cal. 2006).

It is the Plaintiffs' burden to demonstrate that the common issues predominate, and with regard to the issues of law facing Canadian Class members, Plaintiffs have failed to meet this burden.

As for those members of the proposed Class who are United States residents, Sony does not challenge that California law would apply to their claims. Since it is uncontested at this time, the Court will assume for the purposes of this Motion that California law will apply to all purchasers of FX laptops in the United States.

Assuming California law applies, Plaintiffs assert that the following of questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members:

    (a) whether Sony made false and/or misleading written statements concerning the defects inherent in the Vaio FX laptops;
    (b) whether Sony knew, or was reckless in not knowing, that its statements about the performance and reliability of the Vaio FX laptops were false and/or misleading;
    (c) whether the Vaio FX laptops experience memory failure;
    (d) whether the Vaio FX laptops are defective and are not of merchantable quality;
    (e) whether Sony concealed that the Vaio FX laptops experience memory failure at extraordinarily and unacceptably high rates, are inherently defective, and are not of merchantable quality;
    (f) whether Sony's false or misleading statements of fact and Sony's concealment of

      material facts regarding the performance of Vaio FX laptops were likely to mislead consumers;
(g) whether Sony has engaged in unfair, deceptive, or unlawful business practices with respect to the advertising, marketing, and sale of Vaio FX laptops;
(h) whether Sony has engaged in unfair, deceptive, untrue, or misleading advertising of the Vaio FX laptops;
(i) whether Sony has breached its warranties, both implied and express, to Plaintiffs and the members of the Class; and
(j) whether, as a result of Sony's misconduct, Plaintiffs and the Class are entitled to damages and/or equitable relief, and if so, the amount and nature of such relief.

(Pls.' Mem. Supp. Mot. Certification at 14-15; *see also* Compl. ¶ 21.) Plaintiffs further argue that they will demonstrate Sony's unlawful conduct through proof of Sony's "uniform misrepresentations and omissions concerning the Laptop's ability to perform, such as Sony's own specification sheets indicating the Laptops were expandable to 512 MB of RAM." (Pls.' Mem. Supp. Mot. Certification at 15.)

      Plaintiffs rely upon an internal Sony document, attached as Exhibit A to the Ferguson Declaration and sealed without opposition. (Doc. # 60.) Plaintiffs contend that this document demonstrates Sony's knowledge of the allegedly uniform defect, and therefore Sony's course of conduct of forcing class members to incur the cost of repairing the defect makes Plaintiffs' claims uniformly actionable.

      Sony, meanwhile, disputes Plaintiffs' claims of a predominance of common issues, instead arguing that questions affecting only individual members predominate. Sony asserts that: Plaintiffs have provided no competent evidence of a common defect; Plaintiffs have provided no evidence of uniform misrepresentations to the proposed Class; and Plaintiffs' claims require individualized proof of reliance, proof of the history of each class member's use and maintenance of their laptop, and proof of the purpose for which each class member purchased the laptop.

      One of the central tenets of Plaintiffs' Rule 26(b)(3) argument is that there is a common defect among all FX laptops. Plaintiffs rely upon the sealed internal Sony document (*see* Ferguson Decl., Ex. A) to demonstrate this. However, the document simply does not support all of the inferences Plaintiffs make from it to support a common defect. For instance, the document does not show how frequently the listed models experience the stated symptoms.[9] The document does not even support

---

[9] Because the document has been sealed at the request of Plaintiffs and without objection by Defendant (Doc. # 60), the Court does not quote its contents in this Order.

the inference that the listed cause of the symptoms constitutes a "defect."

Plaintiffs also rely upon an "extracted sampling" of Sony's repair and customer service records for the proposition that the FX laptops have a common defect. (Ferguson Decl., Ex. H.) However, while these records show that many people complained about boot failures and freezing in FX laptops, they also indicate that these boot failures had a variety of apparent causes, from the use of incompatible or bad RAM modules (*see id.* at 195, 198-204, 208, 223-24, 228), to a malfunctioning LCD screen (*see id.* at 213), to a software conflict between the BIOS update for new memory and the operating system (*see id.* at 231), to an unspecified cause which was resolved by phone technical support (*see id.* at 189).

Focusing only on the two proposed Class representatives, there is no expert evidence that the problems experienced by Johnson and Sarac emanated from the same root cause. Neither Johnson nor Sarac ever had their laptops professionally examined or diagnosed. (Johnson Dep. at 112; Sarac Dep. at 48.) Additionally, their user experiences differed significantly: Johnson's laptop worked without problems for three years with both memory slots populated, while Sarac experienced performance problems shortly after installing RAM into the second slot. (Johnson Dep. at 73, 88, 97-98; Sarac Dep. at 37-38.) In short, without further factual inquiry, it is not clear that the problems with the laptops of even the two proposed Class representatives were precipitated by the same root cause.

It is important to emphasize that nothing in the record definitively *precludes* an ultimate finding of a common defect. The Court makes no determination regarding the merits of Plaintiffs' claims. Instead, the Court's task at this stage is to determine whether the Complaint and the submitted evidence shows that Rule 23's requirements have been met: specifically, whether the common questions predominate over the individual ones. In this regard, Plaintiffs have failed to demonstrate that a fact-intensive inquiry will not be required of many, if not all, of the members of the proposed Class.

As Sony correctly argues, a manufacturing defect, such as what Plaintiffs allege here, can be significantly different than a design defect, such as what was alleged in *Hanon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Unlike a design defect, which is by its nature ubiquitous, a manufacturing defect can be ubiquitous *or* isolated, depending upon the circumstances. Among the

1  circumstances relevant for making this determination would be whether the FX laptops were
2  manufactured in one or multiple factories; whether the same materials, processes and equipment were
3  used in the manufacture of all FX laptops; whether the same components, RAM modules, software
4  and operating systems were installed on all FX laptops; whether all or most FX laptops have
5  experienced or will experience the alleged defect or symptoms. Plaintiffs supply none of this
6  information. As set out *supra*, it is Plaintiffs' burden to supply "material sufficient to form reasonable
7  judgment on each [Rule 23] requirement." *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975).
8  Given the evidence that in excess of 300,000 FX laptops were sold in the United States
9  (Ferguson Decl. ¶ 6), combined with the lack of evidence that a majority of these owners experienced
10 common problems from a common defect, the following discussion is instructive:

> Since it appears that the majority of the putative class members have no legally recognizable claim, the action necessarily metastasizes into millions of individual claims. That metastasis is fatal to a showing of predominance of common questions. Those class members whose tires had performed as warranted would have to be identified and eliminated from the action. Myriad questions would confront the survivors, including the manner in which the alleged breach of warranty manifested itself, and other possible causes of the problem encountered. This situation simply does not lend itself to class treatment.

*Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (D.C.N.Y. 1982). Similarly, in *Sony Electronics Inc. v. Superior Court*, 145 Cal. App. 4th 1086 (Cal. Ct. App. 2006), wherein the California court considered a similar class certification motion alleging a common memory-slot soldering defect in the Sony Vaio GRX series laptops, the court stated:

> [D]oing as [plaintiff] urges would result in the certification of a class of all United States purchasers of GRX Series Notebook computers, something that he asked for below and that the trial court specifically declined to do based on the lack of sufficient commonality among proposed class members' claims. In the complete absence of evidence that the alleged manufacturing defect exists in all GRX Series Notebook computers (most particularly the absence of evidence that the defect exists in the GRX600 or 700 Series Notebooks), the trial court acted well within its discretion in denying certification of this ... class.

*Id.* at 1097; *cf. Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) ("Our circuit has recognized the potential difficulties of 'commonality' and 'management' inherent in certifying products liability class actions.") (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854-55 (9th Cir. 1982)).

28  Focusing on the Plaintiffs' specific statutory claims, it again appears that individualized

1  inquiries will be necessary. For instance, Plaintiffs' implied warranty claims will likely turn on
2  whether each laptop was fit for the ordinary purpose(s) for which it was intended and used, *see* Cal.
3  Com. Code § 2314(2)(c), and therefore will require an individualized inquiry. *See Osborne v. Subaru*
4  *of Am., Inc.*, 198 Cal. App. 3d 646, 659 (Cal. Ct. App. 1988). As the court in *Osborne* stated:

> [W]hether the cars are fit for their ordinary purpose will necessarily vary from vehicle to vehicle. One plaintiff testified in deposition that she purchased her car in December 1972 when it was new. She drove it approximately 50,000 miles within the first two years before she had to replace the head gaskets. She had to replace the engine block at approximately 110,000 miles. These were the major mechanical repairs for which she sought damages. Other plaintiffs allegedly suffered damages at lower elapsed mileages. The point derived from this panoply of defect-manifestation scenarios is that determining whether the Subarus failed to live up to the implied warranty of merchantability would require proof of the history of each vehicle and its problems.

10  *Id.* (citation omitted). Similarly, Plaintiff Johnson's laptop fulfilled his needs for three years with 512
11  MB installed (Johnson Dep. at 130), while Plaintiff Sarac testified that his laptop fulfilled his needs
12  for a period of time with only 128 MB installed (Sarac Dep. at 35-37). It is easy to imagine that
13  similar variations exist between many of the hundreds of thousands of FX owners.

14  Similarly, the Consumer Legal Remedies Act ("CLRA") only affords remedies to a
15  "consumer," defined as "an individual who seeks or acquires, by purchase or lease, any goods or
16  services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Thus, the CLRA
17  claims of those in the Class who did not acquire their FX laptops for personal use (e.g., those
18  acquiring the laptop for professional use) would fail. As set out *supra*, Sony already has made this
19  argument with respect to both Johnson and Sarac, and even if the argument is ultimately unsuccessful
20  with respect to the two Class representatives, the analysis demonstrates how this legal requirement
21  will require an individual examination of the purpose for which each laptop was acquired.

22  In short, the Court finds that Plaintiffs have failed to meet their burden of showing that "the
23  questions of law or fact common to the members of the class predominate over any questions affecting
24  only individual members." Fed. R. Civ. P. 23(b)(3). Therefore, neither the proposed Class nor Sub-
25  Class may be certified pursuant to Rule 23(b)(3).

26  **D.      Evidentiary Objections**

27  Sony objected to a variety of individual pieces of evidence submitted by Plaintiffs in support
28  of the Motion for Certification. (Docs. # 63 & 77.) The Court has found that even when considering

1 all of Plaintiffs' evidence, the Motion for Certification should be denied. Therefore, Sony's
2 evidentiary objections are **DENIED** as moot.

3       **E.**    **Application to Seal Documents**

4     Sony asks the Court to seal the exhibits to the Declaration of Paul Stewart, submitted in
5 support of Plaintiffs' Motion for Certification. (Doc. # 62.) Sony makes the application pursuant to
6 Local Rule 79.2(c), arguing that the factual information contained therein is Sony's proprietary and/or
7 trade secret information, and that the information is of such a commercially-sensitive nature that it
8 would create a risk of competitive injury to Sony if it were disclosed to the public. Plaintiffs do not
9 object. As the Court has previously ruled with respect to other similar evidence (*see* Docs. # 52 &
10 60), the Application to Seal Documents (Doc. # 62) is **GRANTED**.

11 **IV.**    **Conclusion**

12     As set out above, Plaintiffs have failed to show that they satisfy the requirements of Rule
13 23(a)(3) ("typicality") and Rule 23(b)(2) (primarily injunctive or declaratory relief) or 23(b)(3)
14 ("predominance"). Therefore, Plaintiffs' Motion for Class Certification (Doc. # 43) is **DENIED**.

15     Sony's Objections to Evidence Offered in Support of Motion for Class Certification (Docs.
16 # 63 & 77) are **DENIED** as moot.

17     Sony's Application to Seal Documents (Doc. # 62) is **GRANTED**.

18     On **March 9, 2007 at 11:00 a.m.**, all parties are **ORDERED** to appear for a telephonic status
19 conference to discuss how this case will proceed in light of the Court's ruling.

20     **IT IS SO ORDERED.**

21 DATED: February 22, 2007

22
                                          **WILLIAM Q. HAYES**
23                                           United States District Judge

24
25
26
27
28